COURT OF APPEALS OF VIRGINIA


Present:  Judges Bumgardner, Frank and Humphreys
Argued at Richmond, Virginia


TARYL O. BARNES
                                          OPINION BY
v.    Record No. 2295-99-2        JUDGE ROBERT P. FRANK
                                       OCTOBER 24, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF GOOCHLAND COUNTY
                  Dixon L. Foster, Judge Designate

            S. Neil Stout (Flax & Stout, on brief), for
            appellant.

            Eugene Murphy, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.


     Taryl O. Barnes (appellant) was convicted in a bench trial

of first degree murder in violation of Code § 18.2-32 and

abduction in violation of Code § 18.2-47.  On appeal, he

contends the trial court erred in finding:  1) testimony

regarding his employment inadmissible; 2) the evidence

sufficient to support the conviction for first degree murder

after the Commonwealth amended the indictment to abduction under

Code § 18.2-47; and 3) that the homicide was within the res

gestae of the abduction.  For the reasons that follow, we affirm

the judgment of the trial court.

## I.  BACKGROUND

Appellant recruited Sean Harris (Sean) and William Harris (William) to sell drugs from the South Central Motel in Richmond.  Appellant told Sean and William they could make $600 per day selling drugs, so Sean and William moved to the motel. They lived at the motel and received drugs for resale from appellant and his girlfriend, Regina Smith (Smith).  Once they sold the drugs, they would remit the proceeds to appellant. Smith was the boss of the drug operation, and appellant was her lieutenant.  Smith instructed appellant how to conduct the drug sales.

On the night of May 24, 1998, Sean and some other people had gone to a nightclub, leaving Jeffery Williams (victim) at the motel.  Sean left cash and cocaine under his mattress.  When he returned, he discovered that $80 in cash and $200 worth of drugs were missing.

When Sean asked the victim about the theft, the victim responded that he knew nothing about it.  The victim added, however, that Smith had taken the money and drugs.  Smith said that the victim was lying and told Sean to bring the victim to her.  Sean did so.  Smith told appellant to leave the room, which he did, and then she asked the victim why he had been lying.  She punched him in the face and "smacked" and choked him.  At Smith's command, Sean and William beat the victim with their fists and feet for ten to fifteen minutes.

Sean and William carried the victim outside to the curb where Chilief Brisbon (Brisbon), Sean's roommate, punched the victim. At Smith's direction, William and Brisbon carried the victim back to a motel room. The victim had to be assisted in returning to the room.

Once they entered the room, Brisbon jumped up and down on the victim's head with heavy boots. Then, he struck the victim three or four times with a golf club, using extreme force. The victim was "out of it" after the beating with the golf club.

Brisbon left the room and returned with appellant and Smith. Brisbon secured the victim, who was still alive and mumbling, by putting duct tape around his ankles, wrists, and mouth. When Brisbon began having trouble with the tape, appellant took the tape and tore pieces of it for Brisbon so he could bind the victim. Appellant told Brisbon to turn the victim over so his hands could be taped. The victim was in "pretty bad condition."

Appellant and Smith discussed the victim's condition. They felt they could not leave him in the room and decided that Sean, William, and Brisbon had to do "something" with him.

Sean testified that appellant then said, "take him somewhere and leave him, but don't kill him." Smith told Sean to get rid of the victim and made a "cut-the-throat" motion. While Sean testified that appellant was out of the room when Smith made the gesture, William testified that appellant

remained in the room until Brisbon left the room, which was after Smith's gesture.

Appellant and William dragged the victim to the rear bedroom window and propped him up. Brisbon left the room and drove his car around to the back of the motel. Appellant lifted the victim up to the window so Brisbon could lift him out of the window and into the open car trunk. Sean drove William, Brisbon, and the victim to Goochland County. Sean shot the victim three times, killing him.

At trial, appellant offered Richard Bullock as a witness. The Commonwealth objected on relevancy grounds, and the trial court sustained the objection. Appellant proffered that Bullock would have testified that appellant worked five days a week doing manual labor for minimum wage. Bullock stated he knew appellant from the beginning of 1997 to the beginning of 1998. Appellant argued Bullock's testimony was relevant to show he was not a drug dealer. Appellant argued that a drug dealer who was making $600 per day would not engage in minimum wage work.

Appellant testified he was not selling drugs, he had never sold drugs, he did not help to tape the victim, and he had not instructed the others to kill the victim. Appellant testified he was neither involved in nor saw the beating. Appellant denied assisting Brisbon in putting the victim in the car. He stated he last saw the victim, who was playing a video game,

between 4:00 p.m. and 5:00 p.m. on Saturday, May 23, 1998. The victim was untouched at that time.

Investigator C.J. Fisher of the Virginia State Police testified appellant stated he saw the victim after the beating. Appellant told Fisher the victim's eyes were open but he was not alert.

At the conclusion of the Commonwealth's case-in-chief, appellant moved to strike the evidence as to the firearm and abduction charges. His motion was granted as to the firearm charge, and the Commonwealth amended the indictment from Code § 18.2-48, abduction for pecuniary benefit, to Code § 18.2-47, abduction with the intent to deprive one of their personal liberty.

At the conclusion of all the evidence, appellant renewed his motion to strike, stating that he was relying on his prior arguments. The trial court denied the motion and found appellant guilty of first degree murder and abduction.

## II. ANALYSIS

Appellant first contends the trial court erred when it ruled Richard Bullock's testimony was inadmissible. Appellant contends Bullock's testimony that he was regularly employed as a full-time, minimum wage laborer was relevant to prove he did not sell drugs. Appellant argues anyone making hundreds of dollars per day dealing drugs would not be a minimum wage laborer. The trial court sustained the Commonwealth's objection on relevancy

grounds, agreeing with the Commonwealth that it is common for drug dealers to have other legitimate employment.

"'The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion.'" Crews v. Commonwealth, 18 Va. App. 115, 118, 442 S.E.2d 407, 409 (1994) (citation omitted). "Evidence which 'tends to cast any light upon the subject of the inquiry' is relevant." Cash v. Commonwealth, 5 Va. App. 506, 510, 364 S.E.2d 769, 771 (1988) (citations omitted). Evidence that tends to prove a material fact is relevant and admissible, "'unless excluded by a specific rule or policy consideration.'" Evans v. Commonwealth, 14 Va. App. 118, 122, 415 S.E.2d 851, 853-54 (1992) (citation omitted). A fact is material if it tends to prove an element of an offense or defense. See Johnson v. Commonwealth, 2 Va. App. 598, 601, 347 S.E.2d 163, 165 (1986) (citation omitted). "Every fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue, is admissible." Epperly v. Commonwealth, 224 Va. 214, 230, 294 S.E.2d 882, 891 (1982) (citation omitted).

Bullock's testimony would have required the trial court, as trier of fact, to infer from appellant's minimum wage employment that appellant did not deal drugs. Appellant neither proffered nor presented evidence of the relationship between minimum wage employment and drug dealing. Appellant asked the fact finder to

speculate as to that relationship. The trial court, rather than speculate, agreed with the Commonwealth that no evidence of a correlation was presented or proffered and, therefore, found that the evidence was not relevant. Further, there was evidence that appellant's employment with Bullock was too remote in time to be relevant. The record indicates that Bullock employed appellant from late 1997 until early 1998. Sean testified he sold drugs for appellant from mid-May 1998 until the victim's murder on May 24, 1998. Sean testified the drug distribution out of the motel "went on" for several weeks. There is no evidence in the record to indicate appellant was selling drugs from the end of 1997 to the beginning of 1998. Because the fact finder rejected the testimony on the ground that no evidence was presented or proffered to establish the correlation between employment and drug distribution and the proffered testimony concerned facts remote in time, we find the trial court did not abuse its discretion in rejecting Bullock's testimony.

Appellant next contends that abduction to deprive one of their personal liberty under Code § 18.2-47 is not a predicate offense for Code § 18.2-32,[1] but he concedes abduction for

---

[1] Section 18.2-32 states, in part:

> Murder, other than capital murder, by poison, lying in wait, imprisonment, starving, or by any willful, deliberate, and premeditated killing, or in the commission of, or attempt to commit, arson, rape, forcible sodomy, inanimate or animate object

pecuniary benefit under Code § 18.2-48 is a predicate offense for Code § 18.2-32. Appellant cites no case law to support his position, and we find none. He cites Professor Roger D. Groot as distinguishing between the "level of risks" associated with abduction as the offense is defined under Code § 18.2-48, abduction for pecuniary benefit, and Code § 18.2-47, abduction to deprive one of their personal liberty. Appellant argues that Professor Groot concludes the level of risk associated with Code § 18.2-48 makes the offense a proper predicate felony for the purpose of a finding of guilt under Code § 18.2-32 but the level of risk associated with an offense under Code § 18.2-47 does not qualify that offense as a predicate felony.

"'Where a statute is unambiguous, the plain meaning is to be accepted without resort to the rules of statutory interpretation.'" Sykes v. Commonwealth, 27 Va. App. 77, 80, 497 S.E.2d 511, 512 (1998) (quoting Last v. Virginia State Bd. of Medicine, 14 Va. App. 906, 910, 421 S.E.2d 201, 205 (1992)). "'"Courts are not permitted to rewrite statutes. This is a legislative function. The manifest intention of the legislature, clearly disclosed by its language, must be applied."'" Id. at 80-81, 497 S.E.2d at 512-13 (quoting Barr v. Town & Country Properties, Inc., 240 Va. 292, 295, 396 S.E.2d

---

sexual penetration, robbery, burglary or abduction, except as provided in § 18.2-31, is murder of the first degree, punishable as a Class 2 felony.

672, 674 (1990) (quoting <u>Anderson v. Commonwealth</u>, 182 Va. 560, 566, 29 S.E.2d 838, 841 (1944))).

Code § 18.2-32, by not referring to a particular abduction statute, makes no distinction between the various types of abduction.  If the legislature intended to restrict the predicate abduction offense to a specific statute, it would have done so.  In other statutes, the legislature did, in fact, limit the nature of the abduction to Code § 18.2-48.  The capital murder statute, Code § 18.2-31, limits the predicate abduction offense to Code § 18.2-48.  <u>See</u> Code § 18.2-31.  Code § 18.2-67.5:3, an enhanced penalty statute, limits abduction to Code § 18.2-48.  <u>See</u> Code § 18.2-67.5:3.  The juvenile transfer statute, Code § 16.1-269.1(C), requires a preliminary hearing in juvenile court for a number of specified offenses, including "abduction in violation of § 18.2-48."  Code § 16.1-269.1(C).

The Code of Virginia is replete with references to the violation of specific abduction statutes, and, therefore, if the legislature had intended to limit Code § 18.2-32 to abduction in violation of Code § 18.2-48, it would have done so, as it did in so many other statutes.  Appellant asks us to restrict "abduction" in Code § 18.2-32 to abduction in violation of Code § 18.2-48.  To accept appellant's request, we would be required to re-write the statute, a function only afforded the legislature.  The legislature did not limit abduction to Code § 18.2-48, and we decline the invitation to do so.  <u>See</u> <u>Forst v.</u>

Rockingham Poultry Mktg. Coop. Inc., 222 Va. 270, 278-79, 279

S.E.2d 400, 404 (1981).

Finally, appellant contends the murder took place outside

the res gestae of the abduction.  Appellant argues that because

the murder was not closely related in time, place, and causal

connection to the abduction, it was not part of the same

criminal enterprise as the abduction.  Appellant maintains his

role in the abduction ceased when Sean, William, and Brisbon

drove away with the victim.[2]

---

[2] The Commonwealth argues this issue is procedurally
defaulted because it was not raised in the motion to strike at
the conclusion of the Commonwealth's case-in-chief, nor in the
motion to strike at the conclusion of all of the evidence.
While we agree with the Commonwealth as to the motions to
strike, appellant argued the "time, place, and causal
connection" issues during his closing argument, while stating to
the trial court, "We've gone away from the old res gestae
argument."
    "The res gestae of the underlying crime begins where an
indictable attempt to commit the felony is reached . . . and
ends where the chain of events between the attempted crime or
completed felony is broken."  Berkeley v. Commonwealth, 19 Va.
App. 279, 286, 451 S.E.2d 41, 45 (1994) (citations omitted).
    Applying res gestae to felony murder, the Virginia Supreme
Court held that "the felony-murder statute applies where the
killing is so closely related to the felony in time, place, and
causal connection as to make it a part of the same criminal
enterprise."  Haskell v. Commonwealth, 218 Va. 1033, 1043-44,
243 S.E.2d 477, 483 (1978).

         This Court has held that in a bench
    trial, where a defendant wishes to preserve
    a sufficiency motion after presenting
    evidence, the defendant must make a motion
    to strike at the conclusion of all the
    evidence, present an appropriate argument in
    summation, or make a motion to set aside the
    verdict.

Appellant concedes in his brief that abduction is a continuing offense. We have held that "it [is] for the fact finder to determine in each case . . . whether the [abduction] had been terminated within the purview of [Code § 18.2-32]." Haskell v. Commonwealth, 218 Va. 1033, 1043, 243 S.E.2d 477, 483 (1978). Yet, appellant maintains the abduction ended when the victim was driven away. The murder, he contends, was a separate offense, not committed in the perpetration of the abduction.

Appellant was a full participant in the victim's detention, even if he did not participate in the violent beating. Testimony proved that appellant was impatient with the manner in which Brisbon was stripping the duct tape off the roll. He grabbed the roll from Brisbon and handed Brisbon strips of tape to enable Brisbon to bind the victim's ankles, wrists, and mouth. Appellant told Brisbon to turn the victim over to better tape his hands. The fact finder could properly conclude appellant supervised the binding and gagging of the victim.

Appellant acknowledged to Officer Fisher that the victim was not in good condition after the beating. Other testimony established that Smith and appellant decided they could not leave the victim in the motel room. They decided Sean, William, and Brisbon had to do "something" with him. While Sean

---

Howard v. Commonwealth, 21 Va. App. 473, 478, 465 S.E.2d 142, 144 (1995) (citations omitted). We find that because appellant argued "time, place and causal connection" in his closing argument, he preserved this issue for appeal.

testified appellant said, "take him somewhere and leave him, but don't kill him," the trier of fact was free to disbelieve "don't kill him" as self-serving.  When weighing the evidence, the fact finder is not required to accept entirely either party's account of the facts.  See Barrett v. Commonwealth, 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986) (citation omitted).  The fact finder may reject that which it finds implausible, yet accept other parts which it finds to be believable.  See id.

Testimony proved that appellant was present when Smith gave the "cut-the-throat" motion, directing that the victim be killed.  Appellant then assisted in removing the victim from the motel room through the rear window, knowing that the victim would continue to be detained and deprived of his personal liberty.  According to Sean, appellant ordered that the victim be taken "somewhere."

When appellant assisted the others in moving the victim to the car, the fact finder could infer that he did so with knowledge that Smith had directed the killing.  He, therefore, assisted in the abduction, which resulted in the killing, and had knowledge that the killing was one of the objects of the abduction.  The fact finder could further conclude that appellant ordered the abduction.  Even if appellant was unaware of the plan to kill the victim, his death clearly was foreseeable from the other acts of violence committed by the abductors or from the previously administered beating.

However, appellant could be convicted under Code § 18.2-32 without specific knowledge or intent to kill the victim if the homicide was within the res gestae of the abduction.  See Haskell, 218 Va. at 1043-44, 243 S.E.2d at 483; Griffin v. Commonwealth, 33 Va. App. 413, 421-22, 533 S.E.2d 653, 657 (2000).

> The [felony-murder] doctrine was developed to elevate to murder a homicide committed during the course of a felony by imputing malice to the killing.  The justification for imputing malice was the theory that the increased risk of death or serious harm occasioned by the commission of a felony demonstrated the felon's lack of concern for human life. . . .  The purpose of the doctrine was to deter inherently dangerous felonies by holding the felons responsible for the consequences of the felony, whether intended or not.

King v. Commonwealth, 6 Va. App. 351, 354, 368 S.E.2d 704, 705-06 (1988) (citations omitted).

With Code § 18.2-32, the legislature made killing with malice while committing or attempting to commit one of certain other specified felonies a form of first degree murder.  See Code § 18.2-32.  Neither premeditation nor an intent to kill is an element of felony-murder, but malice is required.

> "Malice inheres in the doing of a wrongful act intentionally or without just cause or excuse, or as a result of ill will. . . ."  Where a person maliciously engages in criminal activity, such as robbery, and homicide of the victim results, the malice inherent in the robbery provides the malice prerequisite to a finding that the homicide was murder.  And, all of the

> criminal participants in the initial felony
> may be found guilty of the felony-murder of
> the victim so long as the homicide was
> within the res gestae of the initial felony.

Wooden v. Commonwealth, 222 Va. 758, 762, 284 S.E.2d 811, 814 (1981) (citations omitted).

In this case, the fact finder determined that the abduction continued at the time of the homicide and therefore was within the res gestae of the abduction. The murder was committed by appellant's accomplices, acting in concert with appellant to further the abduction. See King, 6 Va. App. at 357, 368 S.E.2d at 707 (holding that for the felony-murder doctrine to be used to convict for murder, "'the killing must have been done by the defendant or by an accomplice or confederate or by one acting in furtherance of the felonious undertaking'").

Therefore, the homicide was so closely related to the abduction in time, place and causal connection as to make it part of the same criminal enterprise.

For these reasons, we affirm the judgment of the trial court and affirm appellant's convictions.

Affirmed.