# CIRCUIT COURT OF THE CITY OF SUFFOLK

Commonwealth of Virginia

v.

Angela Amanda Graham

December 11, 2000

Case Nos. CR00F00742, CR00F00743

BY JUDGE D. ARTHUR KELSEY

The defendant, Angela Graham, comes before the Court charged with forging two traffic summonses in violation of Va. Code Ann. § 18.2-168 (Michie 1996). She has filed a pretrial motion to dismiss the charges on the ground that the police officer had no legal authority to stop her vehicle, and thus, no ensuing right to issue summonses or to request her signature. *See* Memorandum in Support of Defendant's Motion to Suppress (Nov. 17, 2000). Though styled as a motion to suppress, the requested relief in fact involves the exclusion of all of the Commonwealth's evidence. Thus, the motion has substantive characteristics more similar to a motion to dismiss. *See* Va. Sup. Ct. Rule 3A:9(a). The Court denies Graham's motion, finding it insufficient as a matter of law.

On June 16, 2000, Officer H. L. Kee of the Suffolk Police Department conducted a traffic stop of a blue Nissan Maxima. He stopped the vehicle because he observed a child not secured in an approved child safety seat in violation of Va. Code Ann. § 46.2-1095 (Michie 1998). Officer Kee issued two traffic summonses to the operator of the vehicle. When asked for her name, the operator identified herself as Juanita Charmain Graham. She then signed both summonses using that name. Officer Kee later learned that the operator had used her sister's name. The operator failed to use her true name, Angela Amanda Graham, because her driver's license had been suspended at

the time of the traffic stop. The Grand Jury returned indictments against Graham for using a false name on the two traffic summonses.

According to Graham, Officer Kee stopped her vehicle solely because he observed an apparent violation of the child safety seat law. The Court makes no factual finding on this particular issue. For purposes of Graham's motion, this assertion will be assumed *arguendo*. Graham argues that the police have no authority to stop vehicles when the only suspected violation involves the child safety seat law. Under this view, because Officer Kee had no legal authority to stop Graham, he likewise had no right to issue any summonses or to seek her signature on them. All evidence of her alleged forgery should be suppressed, Graham concludes, because the traffic stop violated the Fourth Amendment to the U.S. Constitution.

The Fourth Amendment forbids "unreasonable" seizures. "Whether a seizure is unreasonable is determined by balancing the individual's right to be free from arbitrary government intrusions against society's countervailing interest in preventing or detecting crime and in protecting its law enforcement officers." *Bethea v. Commonwealth*, 14 Va. App. 474, 476, 419 S.E.2d 249, 250 (1992) (*en banc*), *aff'd on other grounds*, 245 Va. 416, 429 S.E.2d 211 (1993). In this context, reasonableness (or lack of it) depends in large part on the extent of the individual's loss of freedom caused by the seizure. "[W]hen the police stop a motor vehicle and detain an occupant, this constitutes a seizure of the person for Fourth Amendment purposes." *Logan v. Commonwealth*, 19 Va. App. 437, 441, 452 S.E.2d 364, 367 (1994) (quoting *Zimmerman v. Commonwealth*, 234 Va. 609, 611, 363 S.E.2d 708, 709 (1988)). A full custodial arrest requires a showing of probable cause. A mere investigatory detention, however, may take place "even though there is no probable cause to make an arrest." *Parker v. Commonwealth*, 255 Va. 96, 104, 496 S.E.2d 47, 51-52 (1998) (quoting *Terry v. Ohio*, 392 U.S. 1, 22 (1968)). "In order to justify a *Terry* seizure, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Parker*, 225 Va. at 104, 496 S.E.2d at 52 (internal quotation omitted). "If the stop of the vehicle is without a warrant, the Commonwealth has the burden to prove the stop was legal." *Murphy v. Commonwealth*, 9 Va. App. 139, 143, 384 S.E.2d 125, 127 (1989) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971)); *see also Simmons v. Commonwealth*, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989).

A routine traffic stop should be treated as a *Terry* detention, not a full custodial arrest. *See Clarke v. Commonwealth*, 32 Va. App. 286, 299, 527 S.E.2d 484, 490 (2000); *Stroud v. Commonwealth*, 6 Va. App. 633, 637, 370

S.E.2d 721, 723 (1988) (citing *Berkemer v. McCarty*, 468 U.S. 420, 439-40 (1984)). "An ordinary traffic stop is, however, a limited seizure more like an investigative detention than a custodial arrest." *United States v. Rusher*, 966 F.2d 868, 875 (4th Cir. 1992) (citing *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984)). "We therefore employ the Supreme Court's analysis for investigative detention used in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), to determine the limits of police conduct in routine traffic stops." *Id.* As a *Terry* detention, a vehicle stop may occur if the officer has an articulable and reasonable suspicion "that the operator is unlicensed, the vehicle is unregistered, or the vehicle or an occupant is otherwise subject to seizure for violating the law." *Reel v. Commonwealth*, 31 Va. App. 262, 265-66, 522 S.E.2d 881, 883 (2000); *see also Murphy v. Commonwealth*, 9 Va. App. 139, 143, 384 S.E.2d 125, 127 (1989). In addition, *Terry* stop authority also extends to police officers attempting to maintain "public order" by performing certain types of "community caretaker" functions within their jurisdiction. *Commonwealth v. Waters*, 20 Va. App. 285, 289, 456 S.E.2d 527, 529 (1995) (relying on *Barrett v. Commonwealth*, 18 Va. App. 773, 778, 447 S.E.2d 243, 245 (1994) (*en banc*), *rev'd on other grounds*, 250 Va. 243, 462 S.E.2d 109 (1995)).

Graham asserts that a violation of the child safety seat law can never justify a *Terry* stop because the "legislators intentionally did not make this a criminal offense." Memorandum in Support of Defendant's Motion to Suppress at 1 (Nov. 17, 2000). The statute, Graham notes, provides only for the imposition of a civil penalty. *See* Va. Code Ann. § 46.2-1095(D). Relying on an opinion from the Alexandria Circuit Court, *Commonwealth v. Fells*, 50 Va. Cir. 55 (1999) (Swersky, J.), Graham concludes that a suspected violation of the child safety seat law cannot be a constitutionally sufficient justification for a traffic stop. For several reasons, the Court cannot concur.

To begin with, the child safety seat law provides that a violation may be "charged on the uniform traffic summons form," Va. Code Ann. § 46.2-1095(E), and may result in a monetary penalty upon being "found guilty" of a violation, Va. Code Ann. § 46.2-1098 (Michie 1998). A violation of this law should be treated as a "traffic infraction," which means a "violation of law punishable as provided in § 46.2-113, which is neither a felony nor a misdemeanor." Va. Code Ann. § 46.2-100 (Michie Supp. 2000); *see also* Va. Code Ann. § 46.2-113 (Michie 1998) (violations of Title 46.2 of the Virginia Code "shall constitute traffic infractions" unless the specific provision states otherwise). As for subject-matter jurisdiction over these infractions, "violations of the child restraint law should be heard by the same courts that would hear any other traffic violations." Opinion of the Attorney General,

1994 Va. Att. Gen. 47, 50 (1994) (citing 1982-83 Va. Att. Gen. 346, 347 (1983)).

A violation of the child safety seat law falls within the "Non-Traffic Prepayable Offenses and Uniform Fine Schedule," which provides that "[a]ny person charged" with this offense "may enter a written appearance, waiver of court hearing, plea of guilty, and pay fines and costs." Va. Sup. Ct. Rule 3C:2. It appears more suited, however, for inclusion in the "Traffic Infraction and Uniform Fine Schedule" set out in Rule 3B:2. Whatever the proper list, the distinction made for purposes of the fine schedule has nominal relevance to the Fourth Amendment issue raised by Graham.

While not "deemed to be criminal in nature," traffic infractions nevertheless constitute "violations of public order." Va. Code Ann. § 18.2-8 (Michie 1996). This designation, however, does not weaken the statutory directive that law enforcement officers "shall enforce" the provisions of Title 46.2 — irrespective of whether violations of these provisions are "punishable as felonies, misdemeanors, or traffic infractions." Va. Code Ann. § 46.2-102 (Michie 1998). In this respect, a police officer has the same authority over individuals committing non-criminal traffic infractions as he has over those committing misdemeanors. "For purposes of arrest, traffic infractions shall be treated as misdemeanors." Va. Code Ann. § 46.2-937 (Michie 1998). Absent clear statutory direction to the contrary, "the authority and duties of arresting officers shall be the same for traffic infractions as for misdemeanors." *Id.*; *see Sattler v. Commonwealth*, 20 Va. App. 366, 370, 457 S.E.2d 398, 400 (1995) (Cole, J., concurring).

Graham's argument, therefore, starts out on solid ground. A violation of the child safety seat law does not constitute a crime, at least in the formal sense of the word. A safety seat violation involves a mere traffic infraction, albeit one deemed to jeopardize the "public order." Va. Code Ann. § 18.2-8. Graham's syllogism, however, falls apart with its next premise: that a *Terry* stop cannot be predicated on a suspected violation of the traffic laws of the Commonwealth. Clearly it can. "Vehicle stops for traffic violations occur countless times each day," 4 Wayne R. LaFave, *Search and Seizure*, § 10.8, at 670 (3d ed. 1996), and no Fourth Amendment violation occurs if the officers have a sufficiently reasonable belief that "a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996).

For these reasons, Officer Kee had the authority to conduct a traffic stop of Graham's vehicle for a suspected violation of the child safety seat law. *See generally Penn v. Commonwealth*, 13 Va. App. 399, 402, 412 S.E.2d 189, 190-91 (1991), *aff'd*, 244 Va. 218, 420 S.E.2d 713 (1992) ("A police officer may make a warrantless arrest for a misdemeanor if the offense is committed

in the officer's presence."). To be sure, the "foremost method of enforcing traffic and vehicle safety regulations, it must be recalled, is acting upon observed violations." *Delaware v. Prouse*, 440 U.S. 648, 659 (1979). Officer Kee personally observed Graham's vehicle in apparent violation of the child safety seat law. Nothing in the Fourth Amendment limitations safeguarded by *Terry* disabled Officer Kee from acting upon this observed violation.

Graham finds fault with this analysis, claiming it cannot be reconciled with *Commonwealth v. Fells*, 50 Va. Cir. 55 (Alexandria 1999). There, a police officer initiated a traffic stop for a suspected violation of a Virginia statute requiring adults to wear seat belts. *See* Va. Code Ann. § 46.2-1094 (Michie 1998). The Alexandria Circuit Court held the traffic stop "clearly implicated" the defendant's Fourth Amendment rights because the violation did not involve a "criminal offense," but rather involved only the potential imposition of a "civil penalty." *Fells*, 50 Va. Cir. at 56. Applying the constitutional exclusionary rule, the court in *Fells* stripped the Commonwealth of its evidence.

The reasoning of *Fells*, however, while problematic enough in support of its own result, becomes even less persuasive when offered in support of the result Graham seeks to reach in her case. The adult seat belt law discussed in *Fells* specifically withdraws authority from law enforcement officers to make traffic stops solely based upon a suspected violation of that law. *See* Va. Code Ann. § 46.2-1094(F). This express restriction of power limits the otherwise plenary misdemeanor authority provided by Va. Code Ann. § 46.2-937. It is this statutory limitation, not the non-criminal label attached to the offense, that matters. If that were not the case, *Terry* stops for all traffic infractions (which by definition are *not* "criminal in nature," Va. Code Ann. § 18.2-8) would run afoul of the Fourth Amendment — clearly an unintended, but entirely logical, extension of Graham's argument. *See generally Whren*, 517 U.S. at 819 (*Terry* stop authority exists for enforcement of "civil" traffic laws).

In Graham's case, no statutory limitations restrict the police officers' authority to conduct investigative stops and arrests for violations of the child safety seat law. The statutes cannot be redrafted to insert such a limitation on the ostensible basis that it would achieve consistency between the adult seat belt law and the child safety seat law. Indeed, the conspicuous absence of the limitation in Va. Code Ann. § 46.2-1095 and its equally noticeable presence in Va. Code § 46.2-1094 can only be viewed as a product of a deliberate decision — one involving permissible legislative judgments about competing

public policy goals.[1] The Commonwealth offers this explanation of the legislative intent behind the distinction:

It is foreseeable that the legislature would find that the dangers of improper or sham arrests would outweigh the public safety concern for adults without appropriate safety belt systems. It is just as foreseeable that the legislature would find that such dangers would not outweigh the public safety concerns resulting from the death and serious injury to children because of failure to provide appropriate child restraint devices and safety belt systems.

Commonwealth's Memorandum in Response to Defendant's Motion to Suppress at 2-3 (Nov. 17, 2000).

It matters not, however, whether the Commonwealth's explanation fairly captures the underlying public policy goals behind treating one traffic violation different from another. Absent a patent textual absurdity, legislation must be presumed to mean exactly what it says. Intrinsic to the very concept of the tripartite separation of powers is the maxim that courts "must assume that 'the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute'." *Rasmussen v. Commonwealth*, 31 Va. App. 233, 238-39, 522 S.E.2d 401, 403-04 (1999) (citations omitted). "Courts are not permitted to rewrite statutes. This is a legislative function." *Barnes v. Commonwealth*, 33 Va. App. 619, 627, 535 S.E.2d 706, 710 (2000) (citation omitted).

Given the omission of a statutory bar to traffic stops based upon a violation of the child safety seat law, one cannot be imported into the statutory text, and only by doing so would it be possible to accept Graham's contention that the two statutes "should be interpreted in the same way." Memorandum in Support of Defendant's Motion to Suppress at 2 (Nov. 17, 2000). The authority given to police officers under Va. Code Ann. § 46.2-937 to enforce traffic offenses as they would misdemeanors has not been limited by the child safety seat law. Officer Kee, therefore, had legally sufficient grounds to stop

---

[1] "When considering these statutes, the maxim of statutory construction referred to as *expressio unius est exclusio alterius*, 'the expression of one thing implies the exclusion of another thing,' applies. This maxim provides that where a statute speaks in specific terms, an implication arises that omitted terms were not intended to be included within the scope of the statute." *Powell v. Commonwealth*, 34 Va. App. 13, 17 (2000) (citing *Turner v. Wexler*, 244 Va. 124, 127, 418 S.E.2d 886, 887 (1992)).

Graham's vehicle based solely on a suspected violation of the child safety seat law.

In sum, the Court denies Graham's motion to dismiss the two forgery indictments. Officer Kee did not violate the Fourth Amendment by initiating a traffic stop of Graham's vehicle based upon a suspected violation of the child safety seat law. For this reason, the Court will not exclude from Graham's trial the incriminating evidence surrounding the issuance of the summonses and the allegedly false signatures. It is so ordered.