COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Frank and Humphreys
Argued at Chesapeake, Virginia


MARK B. JOHNSON
                                            OPINION BY
v.    Record No. 0929-01-1         JUDGE ROBERT P. FRANK
                                         MARCH 19, 2002
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                    Edward W. Hanson, Jr., Judge

               Brien A. Roche (Eric David Kessel; Johnson &
               Roche, on briefs), for appellant.

               Stephen R. McCullough, Assistant Attorney
               General (Randolph A. Beales, Attorney
               General, on brief), for appellee.


     Mark B. Johnson (appellant) was convicted in a bench trial of

interfering with the operation of an aircraft, a misdemeanor, in

violation of Code § 5.1-22.  On appeal, he contends the trial

court erred in: (1) finding Code § 5.1-22 does not require a

specific intent to interfere; (2) finding the evidence was

sufficient to convict; (3) not finding Code § 5.1-22 is

unconstitutionally vague.  For the reasons stated below, we affirm

the conviction.

                        I.  BACKGROUND

     On November 1, 2000, police pilot H.J. Alverez was operating

a helicopter in the Magic Hollow area of the City of Virginia

Beach, searching for a convenience store robber.  The helicopter

flew at an altitude of 800 feet.  Military aircraft constantly fly

in this same area.

Alverez testified that, as he was searching for the robber, suddenly "the whole cockpit got illuminated; and I thought it might have been an aircraft coming at us so I veered away from it. It turned out to be somebody on the ground was shining a light -- a spotlight on the helicopter."

Alverez changed his flight path because he "didn't want to get blinded by the light." At trial, Alverez stated he initially was in a "left orbit," travelling in a left hand circle so his flight officer could view the ground and spot the robber. The light came from the left side of the helicopter and from the "chin bubble," a clear plexiglass area below the pilot's feet. Alverez admitted the light from the ground did not cause him to crash or to have a "near crash." He never lost control of the helicopter.

Alverez instructed his flight officer to find the source of the light. Officer R.S. Renner, in a ground unit, was sent to investigate. The officer approached appellant's house and saw appellant with a spotlight in his hand, which was aimed at the helicopter. A cigarette lighter in appellant's vehicle was the power source for the light.

Appellant complied with Officer Renner's request to turn off the light. The officer described the light as a "million candlelight spotlight." When asked why he was shining the light, appellant responded the noise of the helicopter kept him awake and "he was trying to get the number off the aircraft." Renner indicated the helicopter had been overhead "about 15 minutes," moving in a circular path.

Appellant testified that, on the night in question, he and his wife were awakened at approximately 11:40 p.m. by loud,

"incessant" aircraft noise that caused the whole house "to shake." For several weeks prior to this incident, appellant and his wife had been suffering from sleep deprivation due to aircraft and helicopter noise. Upon complaining to the Federal Aviation Administration and the United States Navy, appellant was advised that neither governmental body could investigate the complaints without obtaining certain information about the aircraft, such as identifying call letters, or, in the case of helicopters, the number of propeller blades.

Mrs. Johnson testified that, after hearing the noise for a period of twenty minutes on the evening of November 1, appellant went outside to investigate and identify the offending aircraft, so he could lodge a complaint with the proper authorities. Appellant pointed a marine navigational light, used in sighting water obstructions, at the helicopter in an attempt to identify the aircraft.

Appellant testified the light did not improve his view. He could not see any "identificational [sic] marks, any numbers." He could not determine the number of rotor blades or determine its color. He could not determine that it was a police helicopter. Appellant denied any intention to interfere with the operation of the helicopter.

Appellant said when the helicopter disappeared behind the trees, he would turn off the light. When it re-appeared, he would again turn the light on. This on-and-off process lasted approximately one and a half minutes.

Dr. David Shaw Wright, an expert in measuring the physical qualities of light, testified that the intensity of the light used

by appellant would diminish with distance. According to Wright's measurements, at 800 feet from the source, the light would have an intensity of 3.3 lux,[1] approximately the same illumination as the low-beam headlight of an automobile at 129 feet or the illumination at three feet away from a computer screen. Dr. Wright also gave other comparisons to illustrate the measurement of illumination: full moonlight, .4 lux; a streetlight, 20 lux; light in the particular courtroom, 1000 lux. He indicated one needs at least 500 lux to be able to read.

Dr. Wright had attempted to replicate the November 1 incident by flying in a helicopter at 800 feet.[2] He testified the highest reading he took during this simulation was 3.3 lux. When the ground light shone in his face, Dr. Wright said the light had no impact on him. According to Dr. Wright, the light "did not seem" to have an effect on the helicopter pilot.

Rick Smith, a helicopter pilot, testified that he was a passenger in the helicopter during Dr. Wright's recreation. He indicated that, although he looked directly at the ground, the light had no effect on him. The pilot also had no reaction to the light. Smith opined that such light could not have interfered with the police mission.

At the beginning of the trial, appellant's counsel presented a memorandum[3] to the trial court, which, according to the trial

---

[1] Lux is a measurement of illumination.

[2] The Commonwealth did not object to this "reconstruction" testimony.

[3] The memorandum was not made part of the appellate record nor is it in the trial court's file.

transcript, argued that Code § 5.1-22 is a specific intent offense. The trial court ruled this code section creates a general intent crime. At the conclusion of the Commonwealth's case, appellant moved to strike the evidence. At the conclusion of all the evidence, appellant renewed his motion to strike and, for the first time, argued Code § 5.1-22 was unconstitutionally vague. The trial court denied the motions.

## II.  Specific Intent

Code § 5.1-22 reads:

> Any person who interferes with or threatens to interfere with the operation of any aircraft on or over the territory of this Commonwealth shall be guilty of a Class 1 misdemeanor. Where the act or acts of interference or threatened interference are of such a nature as to endanger the life of the aircraft's operator or the life of any other person, the person interfering or threatening to interfere shall be guilty of a Class 6 felony. Venue for the issuance of a warrant for the arrest and trial of any such person is hereby conferred upon any court having criminal jurisdiction in the political subdivision in this Commonwealth where the aircraft either took off prior to such offense, or where it lands or comes to rest subsequent to such offense, or in or over which the offense occurred.

Appellant argues this statute requires the Commonwealth prove, as an element of the offense, that a defendant had the specific intent to interfere with operation of an aircraft. We disagree.

"While we construe penal statutes strictly against the Commonwealth, 'a statute should be read to give reasonable effect to the words used "and to promote the ability of the enactment to remedy the mischief at which it is directed."'" Dillard v.

Commonwealth, 28 Va. App. 340, 344, 504 S.E.2d 411, 413 (1998) (quoting Mayhew v. Commonwealth, 20 Va. App. 484, 489, 458 S.E.2d 305, 307 (1995) (quoting Jones v. Conwell, 227 Va. 176, 181, 314 S.E.2d 61, 64 (1984))).  In determining the elements established by such statutes, "[w]e may not add . . . language which the legislature has chosen not to include."  County of Amherst v. Brockman, 224 Va. 391, 397, 297 S.E.2d 805, 808 (1982).  See also Saunders v. Commonwealth, 31 Va. App. 321, 326, 523 S.E.2d 509, 511 (2000); Adkins v. Commonwealth, 27 Va. App. 166, 170, 497 S.E.2d 896, 897 (1998).  See, e.g., Stuart v. Commonwealth, 11 Va. App. 216, 217-18, 397 S.E.2d 533, 533-34 (1990) (refusing to find a specific intent element "because the unambiguous language" of the statute did "not require proof of a specific intent" to commit bigamy); Polk v. Commonwealth, 4 Va. App. 590, 594, 358 S.E.2d 770, 772 (1987) ("The resulting effect of the offender's threats . . . is not an element of the crime defined in Code § 18.2-460.  By the express terms of the statute, it is immaterial whether the officer is placed in fear or apprehension.").

Specific intent is not an implicit element of every statutory crime, but instead must be explicitly found in the statute's language in order to establish such intent as an element of an offense.  See Dixon v. Commonwealth, 197 Va. 380, 382, 89 S.E.2d 344, 345 (1955) ("[W]here a statute makes an offense consist of an act combined with a particular intent, such intent is as necessary to be proved as the act itself, and it is necessary for the intent to be established as a matter of fact before a conviction can be had."); Hucks v. Commonwealth, 33 Va.

App. 168, 175, 531 S.E.2d 658, 661 (2000) (explaining that the language of a statute determines what proof of intent is necessary for a conviction).  See, e.g., Barnes v. Commonwealth, 33 Va. App. 619, 630-31, 535 S.E.2d 706, 712 (2000) (explaining that the felony-murder statute does not require the Commonwealth prove the accused had the specific intent to kill); Fleming v. Commonwealth, 13 Va. App. 349, 354, 412 S.E.2d 180, 183 (1991) (finding Code § 18.2-279, discharging a firearm at an occupied dwelling, is a general intent, rather than specific intent, crime).  Interpretations that "rewrite statutes" are not permitted.  Frias v. Commonwealth, 34 Va. App. 193, 199, 538 S.E.2d 374, 376 (2000).

When asked to interpret various code sections, this Court often examines other related statutes that contain similar or contrasting language to help determine legislative intent.  See Pannell v. Commonwealth, 34 Va. App. 287, 294, 540 S.E.2d 527, 531, aff'd en banc, 35 Va. App. 643, 547 S.E.2d 529 (2001); Barnes, 33 Va. App. at 628, 535 S.E.2d at 710-11; Rasmussen v. Commonwealth, 31 Va. App. 233, 238, 522 S.E.2d 401, 403 (1999).  Here, an examination of other specific intent crimes found in the Code is helpful.

This Court has found the "with intent to" language creates a specific intent crime.  See Campbell v. Commonwealth, 14 Va. App. 988, 990-91, 421 S.E.2d 652, 653-54 (1992) (en banc), aff'd on proced. gds., 246 Va. 174, 431 S.E.2d 648 (1993) (finding Code § 18.2-195(1), credit card fraud, creates a specific intent crime); Stuart, 11 Va. App. at 217-18, 397 S.E.2d at 533-34 (finding disorderly conduct is a specific intent crime).

The General Assembly has used this "with intent to" language in numerous places throughout the Code. In the sections criminalizing burglary, for example, the legislature explicitly included a requirement that the Commonwealth prove a specific "intent to" commit particular crimes before a defendant can be found guilty. See, e.g., Code § 18.2-89; Guill v. Commonwealth, 255 Va. 134, 144, 495 S.E.2d 489, 495 (1998) (discussing burglary with the intent to commit rape under Code § 18.2-90). Former Code § 54-524.101:1[4] also required proof of a specific intent to distribute the marijuana found in a defendant's possession in order to convict him under that section. See Adkins v. Commonwealth, 217 Va. 437, 440, 229 S.E.2d 869, 871 (1976). Other sections that have this specific intent language include Code § 3.1-884.25 (bribery or gifts to state employees "with intent to influence said officer or employee in the discharge of any such duty"), Code § 18.2-32.1 (murder of a pregnant woman requires "the intent to cause the involuntary termination of the woman's pregnancy"), Code § 18.2-54.1 (poisoning food or water supplies "with intent to kill or injure another person"), Code § 18.2-152.6 (theft of computer services "with intent to obtain computer services without authority"), Code § 29.1-525.1(A) (erecting a fence "with the intent to confine deer"), Code § 58.1-4017 (forging a lottery ticket "with intent to present for payment"), Code § 60.1-632 (making a false statement "with intent to obtain or increase any [unemployment] benefit").

---

[4] Recodified as Code § 18.2-248.1.

Code § 5.1-22, however, does not contain this language. The section creates a Class 1 misdemeanor for interfering with the operation of any aircraft. We hold that no specific intent requirement is included as an element of this offense.[5] See Stuart, 11 Va. App. at 217-18, 397 S.E.2d at 533-34 (refusing to read a specific intent requirement into a statute unless the language unequivocally requires such an element). See also Fleming, 13 Va. App. at 354, 412 S.E.2d at 183 (finding discharge of a firearm at an occupied dwelling is not a specific intent crime).

Appellant argues that the language, "or threatens to interfere with the operation of any aircraft," indicates the legislature intended Code § 5.1-22 to be a specific intent crime. This argument, however, is not relevant to the trial court's findings. Appellant was not convicted of making a threat, which is also criminalized in Code § 5.1-22. He was charged with and found guilty of actual interference with the helicopter, as defined by the language prior to the disjunctive "or threatens" found in this statute. Any intent requirement created by the "threatens" term applies only if actual interference is not charged. See, e.g., Campbell, 14 Va. App. at 990, 421 S.E.2d at 653 (discussing the effect of a disjunctive term in a statute).

### III. Sufficiency of the Evidence

---

[5] Appellant argues only that the Commonwealth must prove he had the specific intent to interfere. He does not ask that we consider the nature of the general intent required here. At minimum, in this case, the Commonwealth had to and did prove appellant intended to shine the light at the helicopter.

Appellant argues the evidence was insufficient to prove he actually interfered with the operation of the helicopter. We disagree.

> Where the sufficiency of the evidence is challenged after conviction, it is our duty to consider it in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom. We should affirm the judgment unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.

Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). Moreover, "[i]f there is evidence to support the conviction, an appellate court is not permitted to substitute its own judgment for that of the finder of fact, even if the appellate court might have reached a different conclusion." Commonwealth v. Presley, 256 Va. 465, 466, 507 S.E.2d 72, 72 (1998).

Appellant was convicted of the misdemeanor offense defined by Code § 5.1-22, not the felony offense also found in that statute. The Commonwealth must prove the interference "endanger[ed] the life of the aircraft's operator or the life of any other person" only if a defendant is charged with the felony. Code § 5.1-22. Therefore, in this case the evidence must support the trial court's finding that appellant interfered with the operation of the aircraft, not that the interference endangered someone.

The evidence does support the conviction. The trial court held:

> [I]t would seem to me that if you're 800 feet above the ground and all of a sudden a bright light comes at you, you don't know what it is. You're in almost an inherently unstable aircraft because you don't know

>          what it is.  So he performs a sudden
>          maneuver to veer to the right.
>
>          *     *     *     *     *     *     *
>
>          You cannot expect a helicopter pilot 800
>          feet above the ground . . . to expect that
>          all of a sudden he's going to see a
>          spotlight shining directly at him.
>
>          To him, it was a bright light.  To him, he
>          didn't know what it was.  He was operating
>          the aircraft.  All the tests in the world
>          are not going to recreate what happened at
>          that exact moment when he saw that light and
>          he didn't know what it was; and if it caused
>          him to make a sudden evasive maneuver that
>          he hadn't counted on, then that is
>          interference with the operation of his
>          aircraft.

A finding of interference for purposes of a misdemeanor conviction under Code § 5.1-22 does not also require a finding that someone was placed in danger.[6]  According to Black's Law Dictionary 814 (6th ed. 1990), "interfere" means to "check; hamper; hinder; infringe; encroach; trespass; disturb; intervene; intermeddle; interpose."  Another dictionary defines "interfere" as "to come into opposition or collision so as to hamper, hinder, or obstruct someone or something: Constant distractions interfere with work."  Random House Webster's College Dictionary 680 (1997) (emphasis omitted).

Additionally, because the factor differentiating the misdemeanor and felony offenses in Code § 5.1-22 is endangerment, clearly the legislature did not intend to include endangerment as

---

[6] For a felony conviction, the Commonwealth must prove interference and endangerment of the pilot or another person by that interference, but appellant was not found guilty of a felony.

an element of the misdemeanor offense.  See Adkins, 27 Va. App.
at 169-70, 497 S.E.2d at 897 (courts should interpret statutes by
using the plain meaning of the words and examining the statutory
scheme).

Appellant did disturb, intervene, hamper, hinder, and
obstruct the pilot who was operating the helicopter.  The light
shone into the cockpit of the aircraft and caused the pilot to
veer from his intended course.  Clearly, appellant interfered
with the operation of the helicopter.

### IV.  Vagueness

Appellant argues on appeal that Code § 5.1-22 is
unconstitutionally vague because it does not include examples of
the types of prohibited behavior.  This argument was not
preserved for consideration on appeal.

Motions for dismissal of a warrant or indictment on the
ground that a criminal statute is unconstitutional must be made
in writing and filed seven days prior to the trial.  Code
§ 19.2-266.2.  Generally, if the argument is not presented to the
trial court in this manner, then appellant has not preserved it
for appeal.  See Rule 5A:18; Upchurch v. Commonwealth, 31 Va.
App. 48, 51-53, 521 S.E.2d 290, 291-92 (1999) (discussing Code
§ 19.2-266.2).

Here, appellant did not present his argument to the trial
court until, at the earliest, moments before the beginning of the
trial.[7]  The Commonwealth pointed out that appellant had not

---

[7] The transcript suggests a written document was presented
to the circuit court just before the trial, but that document is
not in the trial record.  According to the transcript, the first

complied with Code § 19.2-266.2.  The trial court never explicitly ruled Code § 5.1-22 was constitutional.  Therefore, as the argument was not properly presented to the trial court, appellant did not preserve this argument for appeal.  See <u>Scott v. Commonwealth</u>, 31 Va. App. 461, 464-65, 524 S.E.2d 162, 164 (2000) (holding "claims of constitutional deprivation" must be properly preserved at the trial level before the appellate courts can consider them).

For the reasons stated above, we affirm the conviction.

<u>Affirmed.</u>

---

time appellant argued Code § 5.1-22 is unconstitutional was during closing argument.