COURT OF APPEALS OF VIRGINIA

Present:    Judges Huff, Malveaux and Chaney
Argued by videoconference

UNPUBLISHED

JAQUEZ BROWN

v.        Record No. 2000-22-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE VERNIDA R. CHANEY
APRIL 2, 2024

FROM THE CIRCUIT COURT OF THE CITY OF STAUNTON
Anne F. Reed, Judge

Brent A. Jackson (Brent A. Jackson & Associates, P.C., on brief), for
appellant.

Jason D. Reed, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a bench trial in the Circuit Court of the City of Staunton, JaQuez Brown appeals

his convictions for first-degree murder, using a firearm in the commission of murder, attempted

robbery, using a firearm in the commission of attempted robbery, and conspiracy to commit

robbery.  Brown contends that the evidence is insufficient to sustain his convictions for murder and

attempted robbery, which are predicates for the firearm convictions.  For the following reasons, this

Court affirms the trial court's judgment and remands for the correction of clerical mistakes in the

trial and conviction and sentencing orders.

### BACKGROUND

"On appeal, we review the facts in the light most favorable to the Commonwealth, the

prevailing party below." *Sarka v. Commonwealth*, 73 Va. App. 56, 59 (2021).

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

During a video call on July 9, 2020, JaQuez Brown and his cousin, Cameron Bahle (Cameron), informed Cameron's brother, Brendon, that Brown and Cameron planned to rob Bruce Williams later that night. Brown and Cameron planned to use a gun to steal marijuana from Williams when Williams met with Cameron to sell him marijuana. During the video call between Brown, Cameron, and Brendon, Brendon saw Brown holding a .40 caliber Glock pistol in his hand. Brown told Cameron that he also planned to kill Williams, although Cameron testified that he didn't take Brown seriously when he said this.

Cameron arranged to buy marijuana from Williams using Snapchat text messages. Then Brown drove Cameron to the Dupont Credit Union and used Cameron's ATM card to withdraw $240 in cash. At 10:43 p.m., Cameron sent Williams a text message informing him that he had arrived in the parking lot near Building I at the Springhill Village Apartments. Williams replied by text that he would "[b]e there in a second." At 10:47 p.m., Williams texted, "What car, bro? I'm walking over now." Cameron rolled down the car window, and Williams exchanged greetings with Cameron and Brown. Then Cameron gave Williams $240 in exchange for an ounce of marijuana.

When Williams started to walk away, Brown got out of the car and began talking with Williams. After they started arguing, Brown shot Williams with a .40 caliber Glock firearm. Williams turned to run away, and Brown "continued to fire until there were no rounds left." Then Brown ran back to the car, and they drove around the corner to Brown's mother's house.

In addition to Cameron's testimony that Brown shot Williams, evidence of geolocation data from Brown's and Cameron's cell phones—including the GPS coordinates—showed that both Brown's and Cameron's cell phones were located at the Springhill Village Apartments at the time Williams was shot. After Brown was arrested and Mirandized, he told Investigator Cook that he usually had his cell phone with him and he did not let anyone else use his cell phone.

A few minutes after the shooting, Williams was found lying on the ground with $240 in twenty-dollar bills in his right hand. He was shot six or seven times, including four shots in his back and one shot in the back of his head. Williams died that night from gunshot wounds to his head and torso.

Later that night, Brown told Brendon by phone that he had shot and killed Williams. At Cameron's and Brendon's suggestion, Brown drove to Georgia that night with Cameron, who resided in Georgia with Brendon. On July 17, 2020, Brown and Cameron were arrested in Georgia on murder charges and transported back to Virginia.

After Brown and Cameron were arrested, Brendon's wife found a .40 caliber Glock pistol in a pillowcase on her bed, where Cameron had hidden it. Brendon immediately notified Investigator Shaw of the Staunton Police Department, and the police took custody of the firearm. Brendon testified at trial that the Glock pistol his wife found was the gun that he had purchased and given to Brown about a week before the fatal shooting of Williams. Brendon also testified that he saw Brown holding the Glock pistol when Brown first entered his home. Forensic analysis by Wendy Gibson, a forensic scientist in the field of firearm and toolmark identification, established that the cartridge cases recovered at the murder scene were fired from the Glock pistol that police recovered from Brendon.

After the Commonwealth rested its case in chief at trial, Brown moved to strike the evidence on the grounds that (i) there was no evidence of a completed robbery, (ii) the evidence of money in Williams's hand after the shooting showed that it was not an attempted robbery, (iii) the evidence failed to prove a conspiracy to rob because no robbery was attempted, (iv) the evidence showed a shooting in the heat of passion, not a deliberate, premeditated killing, and (v) the cell phone expert testified that the forensic evidence regarding the cell phone's location, movements, and record of "steps taken" was not 100% accurate and may include false positives.

The trial court noted that Brown was not charged with the offense of a completed robbery, but was charged with attempted robbery, conspiracy to commit robbery, murder in the commission of attempted robbery, and accompanying firearm charges. Taking the evidence in the light most favorable to the Commonwealth, the trial court found the evidence sufficient and denied the motion to strike.

Brown presented no evidence in his defense and renewed his motion to strike. The trial court found the evidence sufficient to prove that Brown and Cameron planned to rob Williams and attempted to rob him by brandishing a firearm to effectuate the robbery. The trial court found that "the gun and ammunition to be used in the robbery was provided by the defendant and that Cameron Bahle provided the money for the drug purchase and made the communications with the victim." The trial court also found "that the defendant and Cameron Bahle shared in a concert of action in the steps necessary to carry out the robbery and thereby conspired to rob Bruce Williams." Accordingly, the trial court found Brown guilty of conspiracy to commit robbery, attempted robbery, and use of a firearm in the commission of attempted robbery.

The trial court further found that "the Commonwealth did not present evidence sufficient to establish that the killing was done in a willful, deliberate and premeditated manner." Accordingly, the trial court did not convict Brown of the charged offense of capital murder.[1] "Instead, the Court f[ound] the defendant guilty of murder in the first degree for a murder committed as a part of an attempted robbery." The court also found Brown guilty of using a firearm in the commission of that offense.

Prior to sentencing, Brown filed a motion to set aside the verdicts. Brown argued that the evidence was insufficient to support a finding that Brown attempted to rob Williams and was thus

---

[1] Effective July 1, 2021, the General Assembly abolished capital punishment in Virginia. Code § 18.2-31 now defines the offense of "*[a]ggravated* murder." *See* 2021 Va. Acts Spec. Sess. I ch. 345 (emphasis added).

insufficient to support the first-degree murder conviction for murder in the commission of attempted robbery. Brown contended that Cameron testified that "any idea of a robbery was called off at the time in which the marijuana was purchased." Brown contended that this purported testimony was corroborated by the fact that the money used to buy the marijuana was found in Williams's hand after he was fatally shot. Brown argued that because there was no robbery or attempted robbery, the attempted robbery and conspiracy convictions should be set aside and the grade of the homicide offense should be reduced from first-degree murder.

On December 5, 2022, prior to sentencing, the trial court heard arguments on Brown's motion to set aside the verdicts. Brown argued that Cameron and Brendon (the Bahle brothers) were proven perjurers and that the trial court should not find Brown guilty based on their testimony. Brown clarified that he was not seeking an acquittal but was asking "for the Court to accurately hold him accountable for what he did do."

In response to Brown's oral arguments, the Commonwealth argued that much of the Bahle brothers' testimony was corroborated by forensic evidence, including the cell phone evidence showing that it was Brown who took multiple steps at the murder scene, not Cameron. The Commonwealth further argued that the day before the shooting, Brown—not Cameron—was present during his friend's purchase of the same kind of ammunition that was used in the murder weapon and found at the murder scene. The Commonwealth also argued that the conspiracy to rob was complete when Brown and Cameron agreed to rob Williams and the conspiracy was not "called off." The Commonwealth contended that Brown attempted to rob Williams, but "his attempted robbery failed."

The trial court acknowledged that "there were significant credibility issues with Cameron Bahle and Brendon Bahle," but considering the totality of the evidence, the court found "that on each of the counts there has been evidence beyond a reasonable doubt to establish the defendant's

guilt." The trial court found that "there was a plan, an agreed plan to commit robbery of Bruce Williams" and "there was not evidence that that conspiracy was terminated prior to its initiation and attempted execution." The court further found "from the evidence as a whole there were steps taken to begin the effort to commit the robbery. The robbery itself was ultimately unsuccessful, but the Court does find that there were specific acts taken in an effort to complete that robbery." The court also found that Brown shot and killed Williams during the course of the attempted robbery. Accordingly, the trial court denied Brown's motion to set aside the verdicts.

Both parties presented evidence at the sentencing hearing. Brown testified that he did not talk to Cameron about a robbery and that Cameron was the one who shot and killed Williams. Following both parties' sentencing arguments, the trial court found that Brown's testimony showed "a lack of empathy and value for the life of another." The trial court told Brown that "the Court doesn't find that you have truly accepted responsibility for your part in what happened here and the impact that will have, continue to have on Bruce Williams' family and your family."

The trial court pronounced the following sentences: 60 years of incarceration with 25 years suspended on the charge of murder, three years of incarceration—the mandatory minimum—on the charge of use of a firearm in the commission of murder, 10 years each on the charges of attempted robbery and conspiracy to commit robbery, to run concurrently with each other and the other sentences in this case, and three years of incarceration—the mandatory minimum—on the charge of use of a firearm in the commission of attempted robbery. The trial court imposed these sentences by order entered on December 20, 2022.[2] This appeal followed.

---

[2] In Circuit Court No. CR21000021-03, Brown was convicted as charged for *conspiracy to commit* robbery in violation of Code § 18.2-22 (Code § 18.2-58), but the trial and conviction and sentencing orders erroneously identify the conviction as "robbery: street w/gun" in violation of "Code § 18.2-58." In Circuit Court No. CR21000021-04, Brown was convicted as charged for *attempted* robbery in violation of Code § 18.2-26 (Code § 18.2-58), but the trial and

STANDARD OF REVIEW

When an appellant challenges the sufficiency of the evidence to support a criminal conviction, this Court "reviews the evidence in the light most favorable to the Commonwealth, as the prevailing party at trial, and considers all inferences fairly deducible from that evidence." *Commonwealth v. Herring*, 288 Va. 59, 66 (2014) (quoting *Allen v. Commonwealth*, 287 Va. 68, 72 (2014)). At issue on appeal is "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). The circuit court's judgment will be affirmed "unless it is plainly wrong or without evidence to support it." *Sarka*, 73 Va. App. at 62; *see also* Code § 8.01-680.

On appellate review, this Court defers to the fact-finder's credibility determinations unless the witness's testimony is "inherently incredible, or so contrary to human experience as to render it unworthy of belief." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019) (quoting *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011)). "A legal determination that a witness is inherently incredible is very different from the mere identification of inconsistencies in a witness'[s] testimony or statements. Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Id.* (citing *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). "Determining the credibility of witnesses who give conflicting accounts is within the exclusive province of the [trial court as fact-finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993).

conviction and sentencing orders erroneously identify the conviction as "robbery: street w/gun" in violation of "Code § 18.2-58."

ANALYSIS

I. Sufficient Evidence to Sustain Conviction for First-Degree Murder

Brown contends that the evidence is insufficient to sustain his murder conviction because the Commonwealth's murder case "ultimately relied on the testimony of the Bahle brothers." Op. Br. 25. Brown argues that in light of the Bahle brothers' inconsistent statements, lies to the police, prior perjurious testimony, motives to fabricate, and inconsistent testimony at trial, their credibility was so impaired that the trial court was "plainly wrong" in accepting their testimony and finding Brown guilty based on their testimony. Op. Br. 25-27. However, Brown fails to identify any specific inherently incredible statements in either Bahle brother's trial testimony. Therefore, this Court defers to the trial court's credibility determinations. *See Kelley*, 69 Va. App. at 626. Considering the totality of the evidence, including the Bahle brothers' trial testimony implicating Brown in the murder and robbery scheme, a rational fact-finder could find that the elements of first-degree murder were proved beyond a reasonable doubt.

II. Sufficient Evidence to Sustain Conviction for Attempted Robbery

Brown contends that the evidence is insufficient to support a finding of attempted robbery because Cameron testified that there was no robbery and that he paid for the marijuana he obtained from Williams. Brown argues that because the evidence was insufficient to prove the elements of attempted robbery, the evidence is also insufficient to sustain his first-degree murder conviction for murder in the commission of attempted robbery. *See* Code § 18.2-32 (distinguishing first-degree and second-degree murder). Brown suggests that since the trial court accepted Cameron's testimony, the trial court was bound to accept Cameron's testimony that he "assumed there was no robbery," so he "paid for the weed." We disagree.

Brown's argument erroneously assumes that the trial court was required to credit all of Cameron's testimony when the court found that Cameron's testimony credibly implicated Brown

in the charged offenses. "The fact finder may reject that which it finds implausible, yet accept other parts which it finds to be believable." *Turner v. Commonwealth*, 56 Va. App. 391, 423 (2010) (quoting *Barnes v. Commonwealth*, 33 Va. App. 619, 630 (2000)), *aff'd*, 282 Va. 227 (2011). Notwithstanding Cameron's testimony that he assumed there would be no robbery, the trial court could reasonably find from the evidence that Brown approached Williams and brandished the firearm with the intent to rob Williams.

Brown further argues that his contention that there was no robbery or attempted robbery is corroborated by the evidence that Williams was still holding the money from the drug transaction after he was fatally shot. However, considering the totality of the evidence, a rational fact-finder could find—as the trial court did—that Brown attempted, but failed, to rob Williams of the money after Cameron exchanged the money for marijuana. Therefore, the evidence is sufficient to sustain Brown's conviction for attempted robbery.

## CONCLUSION

Considering the totality of the evidence, this Court holds that the evidence is sufficient to sustain Brown's challenged convictions for first-degree murder and attempted robbery. Accordingly, this Court affirms the trial court's judgment. The case is remanded to the trial court to correct clerical mistakes in the trial and conviction and sentencing orders to accurately identify the conviction in Circuit Court No. CR21000021-03 as *conspiracy to commit* robbery in violation of Code § 18.2-22 (Code § 18.2-58), and to accurately identify the conviction in Circuit Court No. CR21000021-04 as *attempted* robbery in violation of Code § 18.2-26 (Code § 18.2-58).

*Affirmed and remanded.*