**Carolyn D. DIGGS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 07–CM–1094.**

District of Columbia Court of Appeals.

Submitted Feb. 25, 2009.

Decided March 5, 2009.

---

**2.** We also discussed the theory of transferred intent. *In re E.D.P.,* 573 A.2d at 1308.

Gregory A. Cotter, Washington, DC, appointed by the court, was on the brief for appellant.

Jeffrey A. Taylor, United States Attorney, and Roy W. McLeese III, Florence Pan, Bryan Seeley, and Cormac T. Connor, Assistant United States Attorneys, were on the brief for appellee.

Before RUIZ and OBERLY, Associate Judges, and STEADMAN, Senior Judge.

OBERLY, Associate Judge:

Following a bench trial, appellant was convicted of one count of simple assault and one count of possession of a prohibited weapon. On appeal, appellant does not challenge the assault conviction, but she does challenge the sufficiency of the evidence to support the trial judge's finding that the hammer she possessed was a prohibited weapon, and she further challenges the denial of her right to trial by jury on the charge of possession of a prohibited weapon. We affirm the sufficiency of the evidence to establish that the hammer was a prohibited weapon within the meaning of D.C.Code § 22–4514(b). However, we accept the government's concession that ap-

pellant was entitled to a jury trial on this charge and therefore vacate appellant's conviction and remand to the trial court with instructions to enter judgment against appellant on the lesser-included offense of attempted possession of a prohibited weapon.

## SUMMARY OF THE FACTS

Appellant and her roommate, Richard Cunningham, fell behind in their monthly lease payments on a new television starting in September 2006. Shortly thereafter, Thomas Harrod, an account manager and collections agent from Rent–a–Center, the business from which appellant and Cunningham had leased the television, began calling and writing them about their delinquent account but no further payments were ever made. On Harrod's second visit to appellant's apartment, at which he intended to reclaim the television, his knock on the door was answered by Cunningham and a child. Shortly after Harrod's arrival, appellant appeared, grabbed Harrod by his shirt with "both hands," and began pulling him away from the door. Harrod told appellant to "get off me, stop pulling me." Harrod, seeing that Cunningham was holding a knife, backed away from the door. He then noticed that the child who had been with Cunningham was holding a hammer.

At about the same time, appellant grabbed the hammer from the child and began swinging it at Harrod's face. Harrod testified that appellant missed hitting his face with the hammer by only "two and a half inches." Harrod further testified that he believed appellant was "intentionally" trying to hit him with the hammer.

Appellant explained that the reason her eight-and ten-year old grandchildren, over whom she had legal custody, were "holding their hammers in the air" was because she felt it was her responsibility to protect them from the many pedophiles she believed lived in her neighborhood. Appellant said she kept several hammers in a kitchen drawer to use as "weapons." Appellant testified that she had instructed her grandchildren that "if anyone ever, ever crossed the threshold and it's a man," they were to use the hammers "to protect [themselves]." Appellant also testified that she kept the hammers for the use of laborers who used them to make repairs or hang pictures and "heavy objects" in her apartment.

Appellant denied wielding a hammer against either Harrod or his co-worker while the two men were at her apartment, although she did acknowledge trying to "beat them up" with her fists, hitting them as "hard as [she] could." Appellant contended that she did not know who either of the men were and that she did not know why they were at her apartment. She and Cunningham further contended that they did not know Rent–a–Center wanted the television back, although they admitted that Rent–a–Center had been calling repeatedly about their delinquent account. At no time during or after the presence of Harrod and his co-worker at her apartment did appellant or anyone in her apartment call for help. Harrod, on the other hand, called the police.

## THE TRIAL COURT CORRECTLY RULED THAT THE HAMMER WIELDED BY APPELLANT WAS A "WEAPON" WITHIN THE MEANING OF D.C. CODE § 22–4514(b)

Appellant's first challenge to her conviction is to the sufficiency of the evidence to establish that the hammer was a "weapon" within the meaning of D.C.Code § 22–4514(b). We first examine the language of the statute and then apply it to the evidence adduced at trial.

D.C.Code § 22–4514(a) defines certain weapons that are inherently dangerous, such as machine guns, sawed-off shotguns, blackjacks, switchblade knives, and the like, and flatly prohibits their possession except by members of law enforcement or military personnel while on duty. Section 22–4514(b), with which we are here concerned, prohibits the possession of other devices, *with an intent to use unlawfully against another,* certain specifically enumerated items, such as "an imitation pistol, or a dagger, dirk, razor, stilletto, or knife with a blade longer than 3 inches, *or other dangerous weapon.*" (Emphasis added.) Thus, the interpretative question is whether a hammer, though not specifically enumerated in the statute, can be an "other dangerous weapon" if intended to be "use[d] unlawfully against another."

There is no question that a hammer can have many useful and legitimate purposes that would not suggest an intent to use it unlawfully against another person. Likewise, however, there can be no doubt that a hammer can be extremely dangerous, even an instrument of death, if coupled with an intent to use it unlawfully against another person. Here, we credit the trial judge's finding, based on his assessment of the credibility of the witnesses, that appellant wielded the hammer against Harrod with an intent to use it as a dangerous weapon.

We reject appellant's argument that the hammer might have been "small" and therefore not a dangerous weapon. First, common experience tells us that even a "small" hammer, if used with an intent to cause serious harm to another, can be a dangerous weapon. The physical properties of a hammer, in which the dense metallic head concentrates significant kinetic energy upon impact, tell us that a "small" hammer nonetheless can be a deadly weapon if sufficient force is transmitted to the head by motion of the handle. Similarly, common experience tells us that ordinary household objects can be used as weapons. The Milton Bradley board game of "Clue," played for more than 50 years and still enjoyed today, includes six toys all capable of being used as murder weapons. Some of them, such as the revolver, might be inherently dangerous weapons within the meaning of § 22–4514(a), but others—most notably, the candlestick or the wrench-are ordinary household objects that become dangerous weapons of the sort prohibited by § 22–4514(b) only when used with an intent to commit serious harm to another. Appellant's hammer falls squarely within this category, and the trial judge's decision to credit Harrod's testimony that appellant wielded a hammer with an intent to cause injury to him is amply supported by the evidence at trial. *See, e.g., Lewis v. United States,* 938 A.2d 771, 783 (D.C.2007) (in evaluating a challenge to the sufficiency of the evidence, "this court views the evidence in the light most favorable to the government, keeping in mind the right of the trier of fact to assess credibility and to draw reasonable inferences from the evidence").

Applying that standard here, we agree with the trial court's ruling that the evidence was sufficient to find appellant guilty of possession of a prohibited weapon. Appellant testified that she kept several hammers in her apartment for use as weapons and to hang "heavy objects"; Harrod testified that she swung one of those hammers at him intentionally, missing his face by only a few inches; and that it was he, not appellant, who called the police. This evidence, coupled with the trial court's ability to judge first-hand the demeanor and credibility of the witnesses, compels us to conclude that the evidence satisfies the statutory requirements of D.C.Code § 22–4514(b).

## APPELLANT DID NOT WAIVE HER RIGHT TO A JURY TRIAL ON THE CHARGE OF POSSESSION OF A PROHIBITED WEAPON

■ Appellant correctly argues that she was entitled to a jury trial on the charge of possession of a prohibited weapon because the maximum penalty is "a fine of not more than $1,000 or imprisonment for not more than 1 year, or both." D.C.Code §§ 22–4514(c), –4515. *See, e.g., Jackson v. United States*, 498 A.2d 185, 188 (D.C. 1985) ("a potential sentence in excess of 6 months' imprisonment is sufficiently severe ... to render it triable by jury"). The government concedes that appellant's right to a jury trial was never discussed between the parties or with the trial court and that the record does not show any waiver by appellant of her right to a jury trial. Accordingly, appellant's conviction on the charge of possession of a prohibited weapon must be reversed.

## ON REMAND, THE TRIAL COURT SHOULD ENTER A JUDGMENT OF CONVICTION ON THE LESSER–INCLUDED OFFENSE OF ATTEMPTED POSSESSION OF A PROHIBITED WEAPON

■ The government, opting against a retrial of appellant on the greater offense, asks us to remand the case for entry of judgment on the lesser-included offense of attempted possession of a prohibited weapon. Although appellant does not contest the right of the government to retry her before a jury on the charge of possession of a prohibited weapon, she does argue that it is "too late" for the government to amend the information to charge her with attempted possession of a prohibited weapon, a charge she acknowledges does not carry with it a right to a jury trial because the maximum penalty is a "fine not exceeding $1,000 or imprisonment for not more than 180 days, or both." D.C.Code § 22–1803. The government responds that it does not need to amend the information because, by proving that appellant committed the completed offense of possession of a prohibited weapon, it necessarily also proved that appellant committed the lesser-included offense of attempt to possess a prohibited weapon.

We agree. More than 40 years ago, this court rejected the rule that "failure to consummate the crime is one of the essential elements of an attempt." *United States v. Fleming*, 215 A.2d 839, 840 (D.C. 1966). The court reasoned that this rule "present[ed] the anomalous situation of a defendant going free 'not because he was innocent, but for the very strange reason, that he was too guilty.'" *Id.* at 840–41 (quoting *Connecticut v. Shepard*, 7 Conn. 54 (1828)). *See also Evans v. United States*, 779 A.2d 891, 894 (D.C.2001), quoting *Ray v. United States*, 575 A.2d 1196, 1199 (D.C.1990) (" 'Every completed criminal offense necessarily includes an attempt to commit that offense.' "); *accord, Smith v. United States*, 813 A.2d 216, 219 (D.C. 2002). Here, the charge of attempt to possess a prohibited weapon is subsumed within the proof of the completed offense, and thus we reject the notion that the government must amend the information and then retry appellant on the lesser charge. To hold otherwise would eviscerate the entire theory of lesser-included offenses.

The better practice undoubtedly would be for the government to make this election before trial, rather than after it realizes that the conviction for the completed offense cannot stand because appellant was neither afforded a jury trial nor the opportunity to make a knowing waiver of that right. Nonetheless, the government has proved the attempt charge (as well as the completed offense), and the trial court on remand should enter a judgment of

conviction on the attempt charge. *See, e.g., Willis v. United States,* 692 A.2d 1380, 1383 (D.C.1997) (quoting *Rutledge v. United States,* 517 U.S. 292, 306, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996) (adopting principle of federal appellate courts that have "uniformly concluded that they may direct the entry of judgment for a lesser included offense when a conviction for a greater offense is reversed on grounds that affect only the greater offense")).

Accordingly, we reverse the judgment of the trial court and remand with instructions to vacate appellant's conviction for possession of a prohibited weapon and to enter judgment against appellant on the lesser-included offense of attempted possession of a prohibited weapon.

*So ordered.*