*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-CM-0898

RONALD MAZIARZ, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(2021-CMD-004515)

(Hon. Robert D. Okun, Trial Judge)

(Argued March 5, 2024                                          Decided April 11, 2024)

*Jason K. Clark*, for appellant.

*Steven B. Snyder*, Assistant United States Attorney, with whom *Matthew M. Graves*, United States Attorney, and *Chrisellen R. Kolb* and *John P. Mannarino*, Assistant United States Attorneys, were on the brief, for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, DEAHL, *Associate Judge*, and GLICKMAN, *Senior Judge*.

BLACKBURNE-RIGSBY, *Chief Judge*: In August 2021, Ronald Maziarz was charged with one count of simple assault and one count of possession of a prohibited weapon after he assaulted a taxi cab driver with a hammer. After initially being found incompetent—and later competent—to proceed to trial, Mr. Maziarz was

transferred to Mental Health Community Court ("MHCC") where he was offered an agreement in which he would plead guilty in exchange for deferred sentencing. Under the terms of the plea agreement, Mr. Maziarz's charges would be dismissed if he remained compliant with the requirements of MHCC for four months. At the MHCC hearing, Mr. Maziarz testified that he had assaulted the driver because he was possessed by demons. The MHCC judge said that he could not accept Mr. Maziarz's plea unless he took full responsibility for his actions, noted multiple times that Mr. Maziarz might have a valid insanity defense, and transferred the case back to misdemeanor court. A third competency evaluation found Mr. Maziarz competent to proceed to trial and, after a bench trial, Mr. Maziarz was found guilty of simple assault and possession of a prohibited weapon.

On appeal, Mr. Maziarz argues that the trial court erred in failing to conduct a *Frendak* inquiry[1] into whether he intelligently and voluntarily waived the insanity defense. He also argues that the trial court erred in failing to obtain a written and oral waiver of his right to a jury trial. We agree with Mr. Maziarz and hold that the pre-trial evidence raised a substantial question of Mr. Maziarz's sanity at the time of the offense such that the trial judge should have conducted a *Frendak* inquiry. Further we hold that, because the possession of a prohibited weapon charge carries

---

[1] *See Frendak v. United States*, 408 A.2d 364 (D.C. 1979).

a possible penalty of more than six months' incarceration and, thus, requires a jury trial, the trial court erred in not obtaining a written and oral waiver of Mr. Maziarz's right to a jury trial. Accordingly, we remand for the trial court to conduct a *Frendak* inquiry and, depending on its outcome, either vacate both convictions or reverse only the possession of a prohibited weapon charge and enter a judgment for the lesser charge of attempted possession of a prohibited weapon, which does not require a jury trial.

## I. Factual Background & Procedural History

### A. The Assault

On Sunday, August 8, 2021, sixty-one year-old Ronald Maziarz approached Mulushewa Alemu's taxi cab and asked to be driven to 1845 Harvard Street. Once at the address, Mr. Maziarz asked Mr. Alemu to wait while he went inside. Mr. Maziarz returned a few minutes later with one or two bags, told Mr. Alemu that he had been kicked out of his apartment, and asked to be taken to a shelter on New York Avenue. After driving for a little while, Mr. Maziarz asked Mr. Alemu to turn around and take him back to Harvard Street; Mr. Maziarz told Mr. Alemu that he may be able to stay with someone else.

Once back at Harvard Street, Mr. Alemu parked the car and Mr. Maziarz opened one of his bags. "[A]fter a little while," Mr. Maziarz struck Mr. Alemu with a hammer a few times, causing Mr. Alemu to lose consciousness. When he regained consciousness, Mr. Alemu struggled with Mr. Maziarz, but was able to gain control of the hammer and shout for someone to call 911. At this point, Mr. Maziarz stayed in the cab while Mr. Alemu hit the cab with the hammer and yelled at Mr. Maziarz in an effort to keep Mr. Maziarz from exiting the vehicle. A passerby who heard the commotion asked another passerby to call the police. When the police sirens were audible, Mr. Maziarz exited the cab, put a backpack on the ground, and sat on the bag.

Officer Martinez responded to the scene and saw Mr. Maziarz sitting on what he described as a luggage bag. Mr. Maziarz told Officer Martinez that he was depressed.

## B. Pretrial Proceedings

On August 9, 2021, Mr. Maziarz appeared for his initial presentment hearing before Magistrate Judge Judith Pipe. During the proceeding, Mr. Maziarz responded "[n]o, ma'am" when asked whether he understood his rights; commented that he could not come back to court due to being homeless and malnourished; and stated

that "his resistance was low" when asked to return to the courthouse the following day to speak to the doctors at the urgent care clinic.

At the initial status hearing before Judge Wellner on November 15, 2021, Mr. Maziarz's trial counsel, Jose Molina, informed the court that Mr. Maziarz was absent because he had been involuntarily committed into Washington Hospital Center. The status hearing was rescheduled for February 7, 2022.

At the February 7, 2022 status hearing, Mr. Molina informed the court that Mr. Maziarz had been discharged from the mental health wing of Washington Hospital Center on January 4th, 2022. The court was also informed that Mr. Maziarz did not have a phone and that his community support worker would be coordinating his ability to appear in court.

On February 25, 2022, Mr. Molina requested a preliminary competency evaluation from the Department of Behavioral Health ("DBH") to which the government did not object. The evaluation was conducted on March 10 by Elizabeth Teegarden, PhD and consisted of a 45-minute interview and a review of Mr. Maziarz's medical records. The report found that Mr. Maziarz was engaged in dedicated mental care services, was diagnosed with unspecified psychosis (according to DBH's computerized information system), and experienced anxiety, depression, and paranoia. Dr. Teegarden also noted that, when she asked about the

not guilty by reason of insanity plea, Mr. Maziarz responded, "[t]hat's what happened to me," and that he "sometimes feels 'insane.'" Ultimately, Dr. Teegarden found that Mr. Maziarz was incompetent to proceed with trial because he did not possess sufficient factual and rational understanding of the legal process or sufficient present ability to consult and work with his attorney with a reasonable degree of rational understanding.

On March 18, 2022, Judge Wellner ordered a full competency screening from DBH upon finding that, consistent with the initial screening, Mr. Maziarz appeared to be incompetent to stand trial. The second evaluation was conducted by Lia N. Rohlehr, PhD, ABPP on April 4, 2022, and consisted of a 30-minute interview. Dr. Rohlehr found that Mr. Maziarz was receiving monthly antipsychotic medication and remained cooperative and in behavioral control (but appeared depressed and anxious). Ultimately, Dr. Rohlehr determined that Mr. Maziarz was competent to proceed to trial because he was able to discuss his case and the legal system in a coherent manner, and because his mental illness "should not prevent him from learning or communicating effectively."

On April 29, 2022, consistent with the DBH evaluation, Judge Wellner found that Mr. Maziarz was competent to proceed to trial. Judge Wellner also introduced the potential for Mr. Maziarz to be screened for Mental Health Community Court

("MHCC").  On June 10, the court was informed that Mr. Maziarz was eligible for Mental Health Supervision and Mr. Maziarz was transferred to the MHCC calendar.

At the initial MHCC hearing on June 26, 2022, Judge Iscoe, the presiding judge, explained that, while in MHCC, Mr. Maziarz would have to take regular drug and alcohol testing and follow the requirements of mental health services. Additionally, the government offered Mr. Maziarz a deferred sentencing agreement. The government also raised concerns about Mr. Maziarz's competence and ability to voluntarily and knowingly enter a plea, but Mr. Molina stated that he did not think there was a competency issue.

At the June 28, 2022 hearing, the court was informed that Mr. Maziarz remained fully compliant with his supervision requirements.  The government also informed the court of the plea agreement, which was that, in exchange for Mr. Maziarz pleading guilty to simple assault, the government would defer sentencing "for a period of four months starting today."  If Mr. Maziarz continued to comply with all of the conditions of MHCC, he would be allowed to withdraw his guilty plea at the end of the four months and his case would be dismissed.

By the MHCC hearing on August 4, 2022, Mr. Maziarz had remained compliant with MHCC conditions and was determined eligible to enter his plea agreement.  While under oath, Mr. Maziarz stated—for the first time in the record—

that he hit Mr. Alemu with the hammer because he was possessed by demons and was being controlled by some kind of force that he could not stop. In response, Judge Iscoe noted that he could only accept the plea if Mr. Maziarz was willing to accept responsibility. Judge Iscoe then mentioned four times that he thought there might be a valid insanity defense available, and transferred the case back to misdemeanor court.

On August 24, 2022, Judge Wellner, once again the presiding judge over Mr. Maziarz's case, expressed concern about Mr. Maziarz's competence to proceed to trial, noting that demonic possession strongly suggests a potential competency issue. The government shared this concern and Judge Wellner ordered another competency screening. The competency screening took place on August 29, 2022, lasted 25 minutes, and was conducted by Dr. Rohlehr, who found Mr. Maziarz competent to proceed to trial. The court adopted this determination in the September 7, 2022 hearing. During this hearing, the court also noted that the insanity defense was available for Mr. Maziarz to raise at trial.

### C. The Trial

Mr. Maziarz's case proceeded as a bench trial before Judge Okun on November 15, 2022. The government called three witnesses: Mr. Alemu, Mr. Ian Hoffman, the passerby, and Officer Alphonzo Martinez. As a preliminary matter,

the government raised the issue that Mr. Molina intended to raise a diminished capacity claim and could not raise a not guilty by reason of insanity plea because it was not properly noticed. The court noted that a diminished capacity defense is not recognized in this jurisdiction.

Following the testimonies of Mr. Alemu, Mr. Hoffman, and Officer Martinez, Mr. Molina called Mr. Maziarz to the stand. Mr. Maziarz testified that, when he was in Mr. Alemu's cab, he saw two demons. He stated that the demons had full control of him, and he had no intention to hit Mr. Alemu, but he kept getting possessed.

Judge Okun ultimately ruled that Mr. Maziarz was guilty of simple assault and possession of a prohibited weapon ("PPW(b)"). In so ruling, Judge Okun found that Mr. Maziarz intended to possess the hammer used to hit Mr. Alemu and that he intended to use violence against Mr. Alemu. Importantly, Judge Okun noted that the insanity defense could not have been raised at trial because Mr. Molina did not give notice of it, and that Mr. Molina presented an impermissible diminished-capacity defense. Further, the court did not credit Mr. Maziarz's testimony that he hit Mr. Alemu because of demons because it found that his testimony was completely contradicted by his statement to police just moments after the attack about being "depressed." Instead, the court credited Mr. Maziarz's statement to police and noted that he did not mention any demons shortly after the attack.

Mr. Maziarz was sentenced to 180 days on both charges to be served concurrently, all of which was suspended, and eighteen months' supervised probation. This timely appeal followed.

## II.    Discussion

On appeal, Mr. Maziarz argues that the trial court abused its discretion in failing to conduct a *Frendak* inquiry of Mr. Maziarz and that the trial court plainly erred in failing to obtain a valid written and oral waiver of Mr. Maziarz's right to a jury trial.

### A.    *Frendak* Inquiry[2]

Mr. Maziarz argues that, because the pre-trial record suggests a substantial question of his sanity at the time of the charged offenses, the court was required to conduct a *Frendak* inquiry. We agree.

---

[2] The government argues that this court should not follow *Frendak* because the underlying rationale (that courts have discretion to impose an unwanted insanity defense) has been undermined. However, the case cited by the government for this proposition is neither from our jurisdiction nor in opposition to *Frendak*. *See United States v. Marble*, 940 F.2d 1543, 1548 (D.C. Cir. 1991) (holding that a district court must honor a competent defendant's choice to not raise the insanity defense).

The *Frendak* inquiry is derived from the 1979 case *Frendak v. United States*, 408 A.2d 364 (D.C. 1979). In *Frendak*, the trial court—under the *Whalem* Rule[3]—raised the insanity defense against the defendant's opposition. However, the *Frendak* ruling narrowed the scope of *Whalem* in concluding that, while the trial court has discretion to raise the insanity defense sua sponte when the defendant does not have the capacity to do so, the court cannot raise the defense over the defendant's *voluntary and intelligent* rejection. *Frendak*, 408 A.2d at 378 (emphasis added). The court made this conclusion based on two Supreme Court cases which permitted defendants to waive constitutional rights only after the trial judge had assurance that the defendant was capable of making a voluntary and intelligent choice. *Id.*[4] In reaching this conclusion, the *Frendak* court distinguished between three determinations that the trial court must make when the defendant's mental condition at the time of the offense, and the time of trial, are at issue:

---

[3] In *Whalem v. United States*, the court considered whether a defendant who was competent to assist in his defense may refuse to plead insanity even though there is evidence to support an insanity defense and held that, while the defendant may refuse to raise the insanity defense, they may not prevent the court from raising it. 346 F.2d 812, 818-19 (D.C. Cir. 1965) ("[I]n the pursuit of justice, a trial judge must have the discretion to impose an unwanted defense on a defendant.").

[4] Both cases concern the defendant's right to control their defense. *See North Carolina v. Alford*, 400 U.S. 25, 38 (1970) (it is not unconstitutional for a trial judge to accept a guilty plea from a defendant who professes belief in his innocence, but insists on pleading guilty); *see also Faretta v. California*, 422 U.S. 806, 834 (1975) (out of respect for the individual's choice, a court cannot require a defendant to accept an attorney when they wish to appear pro se).

(1) whether the defendant is presently competent to stand trial; (2) if so, whether he or she, based on present mental capacity, can intelligently and voluntarily waive the insanity defense and has done so; (3) if not, whether the court *sua sponte* should impose the insanity defense based on evidence of the defendant's mental condition at the time of the alleged crime.

*Briggs v. United States*, 525 A.2d 583, 591 (D.C. 1987) (quoting *Anderson v. Sorrell*, 481 A.2d 766, 769 (D.C. 1984)).

Regarding the second prong, now known as the *Frendak* inquiry, the court held that,

[W]henever the evidence suggests a substantial question of the defendant's sanity at the time of the crime, the trial judge must conduct an inquiry designed to assure that the defendant has been fully informed of the alternatives available, comprehends the consequences of failing to assert the defense, and freely chooses to raise or waive the defense. The scope of the inquiry for this determination will vary according to the circumstances present in each case, especially in relation to the background and condition of the defendant. . . . [A] cursory explanation or a rote interrogation cannot satisfy the court's duty.

*Frendak*, 408 A.2d at 380. Thus, *Frendak* clarifies that when evidence suggests a substantial question of the defendant's sanity and there is the possibility of an insanity defense, the court must make specific findings as to whether the defendant has made an intelligent and voluntary decision on whether to raise or waive the defense. *Id.* at 381.

### 1.    Analysis

We review the trial judge's failure to conduct a *Frendak* inquiry for abuse of discretion. *Patton v. United States*, 782 A.2d 305, 312 (D.C. 2001) (citing *Frendak*, 408 A.2d at 379 and *Briggs*, 525 A.2d 583, 593 (D.C. 1987)). A court "abuses its discretion when it makes an error of law." *District of Columbia v. Capital Petroleum Grp.*, 296 A.3d 402, 412 (D.C. 2023) (internal quotation mark omitted) (quoting *Vining v. District of Columbia*, 198 A.3d 738, 745 (D.C. 2018)). This court has previously addressed circumstances both where *Frendak* inquiries should have been conducted by the trial court and where no *Frendak* inquiry was required.

In *Briggs*, we considered whether there was enough evidence in the record to trigger a sua sponte *Frendak* inquiry when there were questions about the defendant's competency to proceed to trial, the defendant stated that they would not plead insane, and the defendant refused to cooperate with a productivity examination. 525 A.2d at 592. Ultimately, we concluded that a *Frendak* inquiry was required because the circumstances (appellant's flood of bizarre letters and pro se pleadings; psychiatric evaluations evidencing appellant's long-term mental illness and questioning his competency; appellant's refusal to cooperate with court-ordered examinations; and appellant's expressed desire to waive an insanity defense despite his counsel's representation that an insanity defense was possible) raised substantial

questions of appellant's sanity. *Id.* at 593. Specifically, this court noted that the trial court's own perceptions of appellant's mental condition, while not determinative, implied that the court itself believed that further inquiry into a possibility of the insanity defense was necessary. *Id.* This court also found that the court should have ascertained whether appellant's apparent, long-term mental illness could have been a basis for insanity at the time of the offense. *Id.*

Similarly, in *Patton*, this court also found that a *Frendak* inquiry was required because the defendant's bizarre pretrial behavior; the defendant's desire to assert an insanity defense during trial; the defendant's lack of cooperation with mental health professionals and denial of his mental illness during trial; a psychologist's concern about the defendant's mental illness during sentencing; and the trial judge's serious concern about defendant's mental illness should have given the trial court notice of its responsibility to conduct a *Frendak* inquiry. 782 A.2d at 313.

Additionally, the court found that a *Frendak* inquiry was required in *Phenis v. United States*, 909 A.2d 138, 156-57 (D.C. 2006) because there were clear indications of mental illness during the time of the offense and during the period after the offense; both the defense and government made numerous comments and filings about a possible insanity defense; pre-sentencing evaluation indicated severe

mental illness; and evidence suggested a high likelihood that the defendant was suffering from psychosis during the offense.

On the contrary, in *Howard v. United States*, this court determined that the trial court did not abuse its discretion in failing to conduct a *Frendak* inquiry because there was no substantial question of appellant's sanity where an uncontested productivity report found the appellant criminally responsible for the offense and because no causal link existed between appellant's mental illness and the crime. 954 A.2d 415, 421-22 (D.C. 2008). *See also Robinson v. United States*, 565 A.2d 964, 967-68 (D.C. 1989) (concluding that there was not a substantial question of the appellant's sanity at the time of the offense sufficient to trigger a *Frendak* inquiry because, despite evidence indicating that appellant may have been insane at the time of the crime, an uncontested productivity examination found that appellant was not insane at the time of the offense). In *Howard*, the appellant, though initially deemed incompetent to stand trial, was ultimately deemed competent to stand trial, competent to waive the insanity defense, and criminally responsible for the offense. 954 A.2d at 418. Distinguished from the above cases, however, the productivity report conducted in *Howard* was based on a large amount of information from multiple sources—including the appellant's own statements "that he understood the wrongfulness of his act at the time of the offense,"—and there was no reason to question it. *Id.* at 421.

We believe that, as in *Briggs* and *Patton*, there are several factors which indicate that a *Frendak* inquiry should have been conducted here: (1) Mr. Maziarz's statements at the initial presentment (namely, his responding "[n]o ma'am" when asked whether he understood his rights and saying that his "resistance is low" when he was asked to return to court for clinical services); (2) Mr. Maziarz's involuntary commitment into the mental health wing of Washington Hospital Center; (3) Mr. Maziarz's testimony that he was controlled by demons at the time of the offense, both at the MHCC hearing and the misdemeanor trial; (4) DBH's initial finding that Mr. Maziarz was incompetent to proceed to trial and that he suffered from paranoid ideation and unspecified psychosis;[5] (5) the government's repeated questioning of Mr. Maziarz's competency; (6) the MHCC's repeated concerns about Mr. Maziarz's mental health and suggestions that there may be a valid insanity defense available; and (7) the trial court's acknowledgment of the availability of the defense.

We find that, taken together, these facts raise a substantial question of Mr. Maziarz's sanity at the time of the offense. *See Briggs*, 252 A.2d at 594 (finding that *taken together*, appellant's pre-trial behavior, evidence of appellant's long-term

---

[5] Importantly, the subsequent two evaluations finding that Mr. Maziarz was competent to proceed to trial occurred after he had been receiving and complying with mental care services. This possibly indicates that Mr. Maziarz may have been suffering from untreated mental illness at the time of the offense.

mental illness, and appellant's resistance to an insanity defense were enough to trigger a *Frendak* inquiry). The government argues that the record did not raise a substantial question of Mr. Maziarz's sanity at the time of the offense because he did not report that he had been controlled by demons during the offense until the MHCC plea. We disagree. The absence of record facts indicating insanity until critical moments in a trial does not absolve the trial court of the responsibility to conduct a *Frendak* inquiry. *See Briggs*, 252 A.2d at 593 ("[T]he absence of record evidence of bizarre behavior until the day after the indictment—a year after the crime and six months after apprehension and detention—is [not] enough to eliminate trial court responsibility for a *Frendak* inquiry.").[6]

---

[6] The government also argues that Mr. Maziarz's *Frendak* claim should be rejected because he does not claim that he would plead not guilty by reason of insanity. However, under *Frendak*, the trial court still has a "duty to confront the insanity issue if the evidence adduced *in the proceedings* raises a substantial question as to a defendant's mental responsibility at the time of the crime." *Patton v. United States*, 782 A.2d 305, 314 (D.C. 2001) (internal quotation marks omitted). Additionally, "[t]he strength of the individual's potential insanity defense should not be a factor in the court's decision, except to the extent that such evidence is useful in determining whether the defendant presently is capable of rationally deciding to reject the defense." *Frendak v. United States*, 408 A.2d 364, 380-81 (D.C. 1979).

We are also troubled by the government's assertion that the trial court did not abuse its discretion in failing to conduct a *Frendak* inquiry because Judge Okun, in not crediting Mr. Maziarz's testimony, found that he did not need to address the issue of insanity. We are not convinced that a lack of evidence at trial demonstrating insanity diminishes the need for a *Frendak* inquiry when, as here, there was not a proper investigation or presentation of an insanity defense. In fact, we believe that

There are many reasons why Mr. Maziarz may not have mentioned being possessed by demons until the MHCC hearing. As he contends in his brief, Mr. Maziarz likely did not have the opportunity to explain his conduct or address the court concerning the facts of the offense until the plea hearing, and most defense attorneys would advise their client not to discuss the facts of the case outside of the defense team prior to this time. Additionally, Mr. Maziarz did not have the opportunity to testify about the offense until the MHCC hearing, and it is unclear whether any of the competency evaluations included questioning about his state of mind during the offense because they were primarily focused on his understanding of the legal process. Further, until the MHCC hearing and the November 15, 2022 trial, Mr. Maziarz may have been more concerned about his living conditions than recounting the events of the crime.[7] In any event, we find that there is sufficient record evidence of Mr. Maziarz's possible insanity, that this evidence undoubtedly raises substantial questions of his sanity at the time of the offense, and that the trial

---

the lack of record evidence that Mr. Maziarz waived the defense provides even greater reason for the trial court to conduct a *Frendak* inquiry.

[7] Mr. Maziarz stated, in the second competency evaluation, that he only thinks about suicide or becomes paranoid when thinking about the offense.

court erred in not inquiring into whether he voluntarily and intelligently waived the insanity defense.[8]

Because the trial court has discretion to determine the scope of the inquiry, it may be sufficient for the court to make a decision on Mr. Maziarz's ability to raise or waive the defense by advising him of the possible consequences of the insanity plea, ensuring that he understands those consequences by questioning him about his reasons for accepting or rejecting the defense, and considering the record evidence of his mental capacity. *Frendak*, 408 A.2d at 380. If, after such an inquiry, the court still needs additional information, it also has discretion to order psychiatric

---

[8] While the ultimate responsibility to conduct a *Frendak* inquiry fell upon the misdemeanor trial court, a *Frendak* inquiry could, and perhaps should, have been conducted during the MHCC plea hearing because Mr. Maziarz's testimony about being possessed by demons raised a substantial question of his sanity during the offense. *See Gorbey v. United States*, 54 A.3d 668, 697 (D.C. 2012) ("[O]nce the court was faced with a substantial question . . . as to appellant's mental capacity at the time of the crime, it should have conducted a full *Frendak* inquiry." (quoting *Patton*, 782 A.2d at 311)) (brackets and internal quotation marks omitted). Given Mr. Maziarz's testimony admitting that he committed the crime, but could not fully control his actions, a finding that Mr. Maziarz wished to raise the insanity defense during the MHCC plea hearing, and that he was insane at the time of the offense, may have allowed him, with advice from counsel, to consider the feasibility of entering an *Alford* plea pursuant to the terms of the MHCC agreement. *See Alford*, 400 U.S. at 37 ("An individual accused of [a] crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.").

evaluations to determine whether the defendant's mental illness has impaired their ability to decide whether to raise or waive the defense. *Id.*

Accordingly, we remand for the trial court to conduct a *Frendak* inquiry to ensure that Mr. Maziarz has been fully informed of the availability of the insanity defense, understands the consequences of asserting or failing to assert the defense, and freely chooses to raise or waive the defense. *Frendak*, 408 A.2d at 380.

## 2.   Procedure After Remand

*Briggs*, 525 A.2d 594-595, outlines guidelines for the procedure after remand. The first step is to determine whether or not Mr. Maziarz made a voluntary and intelligent waiver of the insanity defense. If the court concludes that Mr. Maziarz made a voluntary and intelligent waiver of the insanity defense at the time of trial, his conviction for simple assault will stand and his conviction for PPW(b) will be reversed and remanded with instruction for the trial court to enter judgment on the lesser-offense of attempted PPW(b).[9]   If, however, the court concludes that

---

[9] As discussed *infra*, we must vacate the PPW(b) conviction because it was obtained in violation of Mr. Maziarz's right to a jury trial. An appropriate remedy, in this circumstance, is to allow judgment on the convictions that do not require a jury trial. This includes letting the simple assault conviction stand and instructing the trial court to enter judgment on the lesser-offense of attempted PPW(b), which does not require a jury trial.

Mr. Maziarz did not make a voluntary and intelligent waiver of the insanity defense, then the court shall determine whether he now wishes to waive the insanity defense.

If Mr. Maziarz voluntarily and intelligently wishes to waive the defense, his simple assault conviction will stand and his conviction for PPW(b) will be reversed and remanded for entry on the lesser-included offense. However, if Mr. Maziarz does not want to waive the defense, or the court determines that he is incapable of making a voluntary and intelligent waiver of the defense, the court shall order a productivity or psychiatric examination to obtain an evidentiary basis to determine whether there is sufficient evidence for an insanity defense.

If Mr. Maziarz cooperates with the examination, and the court concludes that there is sufficient evidence that he may have been insane at the time of the offense, his convictions will be vacated and the trial court shall order a new insanity phase of the trial (which is to be a jury trial unless Mr. Maziarz expressly waives his right). If Mr. Maziarz cooperates with the examination and the court concludes that there is insufficient evidence to raise an issue of insanity, his conviction for assault will stand and his conviction for PPW(b) will be reversed and remanded for entry on the lesser-included offense. If Mr. Maziarz does not cooperate with the examination, the court shall make an evidentiary determination based on other evidence in the record.

## B.     Jury Trial

The parties agree that the trial court erred in failing to obtain a written and oral waiver of Mr. Maziarz's right to a jury trial.  They also agree that the appropriate remedy is to reverse Mr. Maziarz's conviction for Possession of a Prohibited Weapon ("PPW(b)") and remand to the trial court with instruction to enter judgment on the lesser-included offense of attempted PPW(b).

### 1.     Analysis

We review the trial court's failure to obtain a waiver of Mr. Maziarz's right to a jury trial for plain error.  *Miller v. United States*, 209 A.3d 75, 78 (D.C. 2019); *Fortune v. United States*, 59 A.3d 949, 957 (D.C. 2013).

Mr. Maziarz was charged with PPW(b) pursuant to D.C. Code § 22-4514(b). Because a violation of D.C. Code § 22-4514(b) carries a possible penalty of greater than six months, *see* D.C. Code § 22-4515 ("Any violation of any provision of this chapter for which no penalty is specifically provided shall be punished by . . . imprisonment for not more than 1 year . . ."),  Mr. Maziarz was required to be tried by jury unless he expressly waived the right.  *Fortune*, 59 A.3d at 956-57; *see* D.C. Code § 16-705 ("In a criminal case tried in the Superior Court in which, according to the Constitution of the United States, the defendant is entitled to a jury

trial, the trial shall be by jury, unless the defendant in open court expressly waives trial by jury and requests trial by the court, and the court and the prosecuting officer consent thereto."); *see also Jackson v. United States*, 498 A.2d 185, 188 (D.C. 1985) (noting that the Supreme Court, in *Baldwin v. New York*, 399 U.S. 66 (1970), held that an offense that holds a potential sentence of six months or more is sufficiently severe to require trial by jury). We find that the trial court's failure to obtain such a waiver violated Mr. Maziarz's constitutional right to a jury trial for a criminal offense punishable by more than six month's incarceration.

Additionally, the trial court's failure to obtain Mr. Maziarz's waiver of his right to a jury trial is structural error requiring reversal. *Fortune*, 59 A.3d at 957 ("[T]he failure to make the prescribed determination of waiver is a structural error . . . that obviates the need for further inquiry into whether the defendant's substantial rights were affected by the error."). We therefore conclude that Mr. Maziarz's PPW(b) conviction must be reversed.

This court has adopted the principle that appellate courts may direct the entry of a judgment for a lesser-included offense when a conviction for a greater offense is reversed on grounds that only affect the greater offense. *Willis v. United States*, 692 A.2d 1380, 1383 (D.C. 1997) (citing *Rutledge v. United States*, 517 U.S. 292, 307 (1996)). Attempted PPW(b) is a lesser-included offense of PPW(b) because the

elements of attempted PPW(b) are subsumed within PPW(b). *Diggs v. United States*, 966 A.2d 857, 861 (D.C. 2009). It follows that, in proving PPW(b), the government necessarily proved attempted PPW(b). *Id.* Moreover, the grounds for reversing Mr. Maziarz's PPW(b) conviction (failure to obtain a jury trial waiver) do not apply to attempted PPW(b) because attempted PPW(b) carries a penalty of less than 6 months and, thus, does not require a jury trial. *See* D.C. Code § 22-1803 ("Whoever shall attempt to commit any crime . . . shall be punished . . . by imprisonment for not more than 180 days . . .").

Further, where the government has opted against retrial of an appellant on the greater offense, and asked the court to remand the case or enter a judgment on the lesser inchoate offense, this court has directed the trial court on remand to enter a judgment of conviction on the lesser-included inchoate offense. *Diggs*, 966 A.2d at 861-2. Here, the government "opt[s] against retrying Maziarz before a jury on the greater offense of PPW(b)." Therefore, it is appropriate for this court to reverse Mr. Maziarz's PPW(b) conviction and remand with instruction to enter a judgment for attempted PPW(b). Accordingly, depending on the result of the *Frendak* inquiry, we hold that Mr. Maziarz's PPW(b) conviction should be either vacated or reversed and remanded with instruction to enter a judgment for attempted PPW(b).

### III. Conclusion

Accordingly, we hold that the trial court erred in not conducting a *Frendak* inquiry and by not obtaining a valid oral and written waiver of Mr. Maziarz's right to a jury trial. Therefore, we remand for a *Frendak* inquiry according to the procedure as laid out in this opinion.

*So ordered.*