COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Malveaux, Raphael and Frucci
Argued at Arlington, Virginia


LIAM WALLACE BATES

                                                    MEMORANDUM OPINION* BY
v.         Record No. 1319-23-4                     JUDGE STUART A. RAPHAEL
                                                    SEPTEMBER 3, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Randy I. Bellows, Judge

Kimberly Stover (Joseph D. King; King, Campbell, Poretz &
Mitchell PLLC, on briefs), for appellant.

Kimberly A. Hackbarth, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Liam Wallace Bates appeals his convictions under Code § 18.2-67.1(A)(2) for oral

sodomy and attempted anal sodomy of an incapacitated victim.  We reject his claim that the

evidence failed to prove attempted anal sodomy.  Two of Bates's friends witnessed the attempted

penetration, and the forensic evidence confirmed the resulting trauma to the victim's anus.  Bates

has defaulted his argument that, since he was charged only with the completed offense, he could

not be convicted of attempted sodomy.  And we reject Bates's call for a new trial based on

excluded evidence.  The trial court properly excluded the testimony of the victim's seventh-grade

classmate about their two-week "relationship" nine years earlier.  Bates theorizes that the

testimony showed that the victim was a closeted gay man who had a motive to lie to avoid being

outed.  But we see no abuse of discretion in the trial court's finding that the former classmate's

testimony was too attenuated and remote to be relevant.  So we affirm both convictions.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard" the defendant's evidence when it conflicts with the Commonwealth's evidence, "regard as true all the credible evidence favorable to the Commonwealth," and read "all fair inferences" in the Commonwealth's favor. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

*Facts*[1]

On the evening of December 31, 2021, Bates drove a group of friends to a New Year's Eve party at another friend's house. Bates had volunteered to be the designated driver. The celebrants—including W.M. and Robert H.—were friends from high school and all were about 19 years old. W.M. consumed alcohol and marijuana, became very inebriated, and "passed out" on a couch before midnight. When his friends tried to rouse him, W.M. was mumbling and incoherent.

Bates left the party with W.M. and Robert at about 1:30 a.m. W.M. was so drunk that Bates and another friend had to assist him to Bates's car, where they placed him in the back seat. During the 20-minute drive to Robert's house, W.M. rambled incoherently. Bates and W.M. remained in the car in the driveway after Robert went inside. Robert texted his friend and neighbor, Nolan C., and they arranged to take a walk together. As Robert left his house for the walk, he saw that Bates's car was still in the driveway, but Robert kept walking to meet Nolan.

---

[1] To the extent that certain facts mentioned in this opinion are found in the sealed portions of the record, we unseal only those portions. *See, e.g.*, *Khine v. Commonwealth*, 75 Va. App. 435, 442 n.1 (2022).

Bates's car was still in the driveway when Robert and Nolan returned, so they walked up to take a closer look. They saw Bates and W.M. together in the back seat. W.M. was lying face down on his stomach and was at least partially naked from the waist down. Bates was "undressed," lying on top of him. Based on their body positions and the way Bates was "moving on" him, Nolan believed that Bates was having "anal sex" with W.M. W.M.'s body showed no sign of movement. Robert was distressed by what he saw, exclaiming "What the f***."

When Bates noticed Robert and Nolan peering in, Bates pulled up his pants and opened the car door. Seeming "quite panicked," Bates apologized and asked them, "Are you okay with this?" Saying he would drive W.M. home, Bates quickly exited the back seat, got in the driver's seat, and sped away. About ten minutes later, Bates texted Robert, apologizing and asking him "not to say anything." Bates also texted Nolan, "I'm sorry."

At about 1:51 a.m., Bates texted another mutual friend, Alex G., that there was an "emergency"; W.M. "need[ed] help" because he was very drunk. Alex was with his girlfriend at the time and didn't want Bates to bring W.M. to his house.

Bates delivered W.M. to his home at about 3:00 a.m. According to W.M.'s mother, W.M. was "very disheveled." He carried an open case of beer, and the cans fell from the box as he stumbled along. W.M.'s mother held him by his sweatshirt to keep him from falling, helping him first to the bathroom and then to his bedroom. Worried that he would vomit into his sweatshirt, she helped him remove it. It was on inside-out. W.M. was shirtless underneath. When asked about his missing shirt, W.M. looked "blankly" at her, then stammered, "Where's my shirt?"

W.M. had no memory of what happened from when he was at the party until he woke up at home the next day. Upon awakening, he was nauseous, his head hurt, and he felt "significant pain in and around [his] anus." After reading a "very distressing text from Nolan" about what

had happened, W.M. conferred with family members and then called the police. W.M. underwent a sexual-assault examination. He told the nurse that he did not remember the encounter. But the examiner found abrasions to W.M.'s anus that were consistent with an object entering the anal cavity. Photographs of the abrasions were admitted into evidence.

Within 24 hours of the incident, Nolan prepared an account of what he had witnessed in Bates's car. Nolan saw Bates "without bottoms on, gyrating on what look[ed] to be W.M.," who also was "not wearing clothes and was completely unresponsive lying face down in the back seat of the car." Nolan remembered hearing Robert say that W.M. was "blackout drunk."

The next day, W.M. called Bates while law-enforcement officers recorded the call. Bates told W.M. that he was drunk and fell "sound asleep" after they left the party. Bates used an Apple Watch to check W.M. for a pulse. Bates said that W.M. had gotten out of the car to "vomit and piss," falling both times. Bates claimed that W.M. "came on" to him in the back seat and "things escalated." Bates said that he did not feel "right" about it because W.M. was drunk. Still, Bates admitted, "I sucked your dick for a little bit." When W.M. mentioned his anal pain, Bates denied touching him "back there."

A few days later, Nolan also participated in a recorded call with Bates. Nolan confronted Bates about seeing him "thrusting" into W.M., having sex; Bates denied doing so. Bates repeatedly claimed that he and W.M. had just kissed, nothing more. Bates also denied that he was on top of W.M.

In a text-message exchange with Alex a week later, Bates said that he did not "sexually assault or rape" W.M. Bates claimed that W.M. said he loved Bates and prompted the sexual contact. Bates added that he and W.M. kissed and Bates "suck[ed] off" W.M. Bates maintained that W.M. was on top of him in the back seat, not the other way around. Alex struggled to believe Bates because W.M. had rejected Bates's advances before; Alex also commented that

- 4 -

Bates had a "history of being gay" and being "interested in W.M.," while W.M. "had neither." Alex recalled an incident between W.M. and Bates during a trip in August 2021. When W.M. had been under the influence of alcohol, Bates asked to kiss W.M., and W.M. had refused.

*Trial Proceedings*

On the first day of trial, the Commonwealth moved *in limine* to exclude evidence of W.M.'s sexuality under the rape-shield statute, Code § 18.2-67.7. While agreeing that evidence of a person's sexuality is evidence of sexual predisposition, defense counsel argued that such evidence was not subject to the rape-shield statute because it is not evidence of sexual conduct. The Commonwealth responded that a claim that W.M. was a "closet homosexual" was protected by the rape-shield statute and that Bates never noticed the pretrial hearing required by Code § 18.2-67.7. Bates proffered that a witness would testify to having been in a same-sex "relationship" with W.M., though there was no sexual contact between them.[2] The trial court found that the evidence, although not concerning specific sexual conduct, was "properly subject" to the rape-shield statute.[3] But the trial court also concluded that if the Commonwealth introduced testimony that W.M. was heterosexual, thus tending to undermine Bates's claim that the acts were consensual, that would open the door for the defense to offer evidence to the contrary.

---

[2] In the motion, the Commonwealth sought to exclude expert testimony from Dr. Elie G. Aoun about fears among the LGBTQ+ community of sexual orientation being revealed. Bates proffered no testimony from Dr. Aoun, and the trial court did not rule upon its admissibility. Thus, we do not consider any claim concerning the admissibility of Dr. Aoun's testimony.

[3] The trial court excused Bates's failure to timely comply with the rape-shield statute's notice provision. *See* Code § 18.2-67.7(B) (requiring the party offering evidence of a complaining witness's past sexual conduct with someone other than the accused to file "a written notice generally describing the evidence"). The trial court noted a dearth of authority on whether the statute extends to sexual orientation, although it found that the proposed testimony was subject to a rape-shield hearing.

On the third day of trial, outside the jury's presence, the trial court held a closed hearing on the evidence Bates sought to introduce about W.M.'s sexual orientation. Bates maintained that the Commonwealth's admission of Alex's message that Bates had a "history of being gay" and "interested in W.M.," while W.M. "had neither," opened the door to evidence that W.M. had exhibited homosexual behavior. The court permitted Bates's proposed witness, D.A., to be questioned outside the jury's presence. D.A. testified that he had been a friend of W.M.'s nine years before. When they were 12 years old, in seventh grade, D.A. and W.M. "dated briefly" for about two weeks. D.A. said that he himself was gay and known to be gay at the time. D.A. believed that W.M. was "pansexual," meaning that gender was not a consideration in "choosing a partner." D.A. testified that he and W.M. publicly displayed their affection in the form of "cuddling" and W.M. putting his head on D.A.'s shoulder. D.A. said that W.M. broke off their two-week relationship after his parents "found out and he had to end it." D.A. also said that W.M. previously dated a transgender boy—which, according to counsel, meant a boy identified at birth as a girl. D.A. saw them hold hands in the hallway.

The trial court rejected Bates's argument on two grounds. First, the court found that Alex's message did not open the door to evidence of W.M.'s sexual orientation. And second, D.A.'s testimony lacked relevance and probative value considering that the evidence was, at most, that of affection between 12-year-old boys for a 2-week period 7 years earlier.

After the trial court denied Bates's motion to strike, Bates testified in his own defense. Bates said he picked up Robert, W.M., and another friend and drove them to the party on New Year's Eve. Bates and the others wanted to leave the party after midnight, but W.M. wanted to sleep for a while, so they waited. Meanwhile, Robert continued to drink alcohol and, according to Bates, appeared to be intoxicated. After his nap, W.M. left the party with Bates and Robert to go home. Bates said that W.M. was awake and talking during the drive to Robert's house. Bates

dropped Robert off at the house but stayed in the driveway because W.M. said that he wasn't ready to go home.

Bates said that, after he smoked marijuana, W.M. asked him to get in the back seat; Bates obliged. After talking about college, W.M. complimented Bates for losing weight and said that he loved Bates. In Bates's recounting, W.M. told him not to tell anyone and then W.M. began kissing him. They both removed their sweatshirts and shirts and continued kissing, with W.M. on top of Bates. W.M. pulled down his pants and exposed his penis, then pulled down Bates's pants. After more kissing, W.M. asked Bates to "suck his dick." According to Bates, W.M. grabbed Bates's neck and pulled him down to his penis for about 20 seconds. Bates pushed himself away and resumed kissing W.M. Eventually, although he claimed to be underneath W.M., Bates noticed Robert and Nolan at the car window, so he separated from W.M. They put on their shirts and sweatshirts, and Bates got out of the car to "deal with" Robert and Nolan. Bates claimed that when he asked if his friends were "okay with this," he was referring to their seeing W.M. with a man. Bates said that neither Robert nor Nolan tried to talk to W.M. before Bates drove away. When Bates drove to W.M.'s home, W.M. collected the box of beer from the trunk and walked up the steps and into the house.

At the charging conference, relying on Code § 19.2-286, the Commonwealth requested Instruction 9A, permitting the jury to convict Bates for *attempted* anal sodomy if it did not find that penetration had occurred. Bates opposed the instruction, arguing that "there is either . . . sodomy or there is not . . . sodomy" and that "the Commonwealth [was] trying to move the goalpost, because it ha[d] some concerns about the case that it put forward." The court granted the attempted sodomy instruction.

After the trial court denied Bates's renewed motion to strike, the jury found Bates guilty of oral sodomy and attempted anal sodomy. The trial court denied Bates's motion to set aside

the verdict, issuing a lengthy opinion detailing its reasoning. *Commonwealth v. Bates,* No. FE-2022-485, 2023 Va. Cir. LEXIS 121 (Fairfax July 21, 2023). The court sentenced Bates on the attempted anal-sodomy conviction to 10 years' incarceration with 5 years suspended.[4] The court sentenced Bates on the oral-sodomy conviction to 15 years' incarceration with all but 5 years and 7 months suspended. The court ordered the sentences to run consecutively, resulting in an active sentence of 10 years and 7 months. Bates timely appealed.

ANALYSIS

### A. *Exclusion of Defense Evidence (Assignments of Error 1 & 2)*

Bates claims that the trial court erred in refusing to admit evidence of W.M.'s "same sex attraction," arguing that the evidence was admissible under the Virginia rape-shield statute, Code § 18.2-67.7. Bates reasons that the Commonwealth's admission of Alex's messages "opened the door" to admitting D.A.'s testimony about his same-sex "relationship" with W.M. Bates claims that D.A.'s excluded testimony would have shown W.M.'s motive to fabricate the allegations because W.M. did not want it publicly known that he was sexually attracted to men.[5]

---

[4] "Forcible sodomy is a felony punishable by confinement in a state correctional facility for life or for any term not less than five years." Code § 18.2-67.1(B). The attempted anal-sodomy conviction here was a Class 4 felony. *See* Code § 18.2-26(1) (punishing as a Class 4 felony "every person who attempts to commit an offense that is . . . punishable by a maximum punishment of life imprisonment or a term of years in excess of twenty years"). A Class 4 felony is punishable by "a term of imprisonment of not less than two years nor more than 10 years." Code § 18.2-10(d).

[5] Bates asserts for the first time on appeal that excluding D.A.'s testimony about W.M.'s alleged same-sex attraction also violated Bates's constitutional rights. This claim is procedurally defaulted because it was not raised in the trial court. *See* Rule 5A:18. The procedural default applies even to constitutional claims. *See Harvey v. Commonwealth*, 297 Va. 403, 417 n.3 (2019). For the first time in his reply brief, Bates asserts that we should invoke Rule 5A:18's "ends of justice exception" to consider his constitutional claims. But "Rule 5A:20(e) requires that when an issue has not been preserved for appellate review, the *opening* brief [must] state why the good cause and/or ends of justice exceptions to Rule 5A:18 are applicable." *Stokes v. Commonwealth*, 61 Va. App. 388, 397 (2013) (emphasis added). Having failed to raise the ends-of-justice exception in his opening brief, this argument comes too late.

We review the trial court's decision to admit or exclude evidence for an abuse of discretion. *Hicks v. Commonwealth*, 71 Va. App. 255, 270 (2019). In conducting our review, "we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports [that] action." *Id.* (alteration in original) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Id.* (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)).

Under the rape-shield statute, "general reputation or opinion evidence of the complaining witness's unchaste character or prior sexual conduct shall not be admitted" in prosecutions for various sexual offenses, including sodomy. Code § 18.2-67.7(A); Va. R. Evid. 2:412(a) ("must not be admitted"). Absent agreement by the complaining witness, "evidence of specific instances of his or her prior sexual conduct shall be admitted *only if it is relevant*" and if a statutory exception is met. Code § 18.2-67.7(A) (emphasis added). One exception permits the accused to present "evidence relevant to show that the complaining witness had a motive to fabricate the charge against the accused." Code § 18.2-67.7(B). So whether evidence of prior sexual conduct is relevant presents a threshold question. *See Neeley v. Commonwealth*, 17 Va. App. 349, 357 (1993).

The trial court excluded D.A.'s testimony on two grounds. First, it rejected Bates's claim that the Commonwealth opened the door by introducing the text-message exchange in which Alex told Bates that W.M. had "neither" a "history of . . . being gay" nor of being interested in Bates.

We will assume without deciding that the Commonwealth opened the door to Bates's offering evidence, as he claims, to show that W.M. was gay but had not "come out" and was

afraid to reveal his sexual identity.[6]  Even so, opening the door does not mean opening the door to everything, including evidence that is irrelevant or speculative.  We see no abuse of discretion in the trial court's excluding D.A.'s testimony on the ground that D.A.'s testimony was not relevant to show that W.M. was secretly gay and afraid of being outed.

Evidence "is relevant if it has any logical tendency, however slight, to establish a fact at issue in the case [and] . . . material if it relates to a matter properly at issue."  *Castillo v. Commonwealth*, 70 Va. App. 394, 462 (2019) (alterations in original) (quoting *Cousins v. Commonwealth*, 56 Va. App. 257, 271 (2010)); *see also* Va. R. Evid. 2:401 (defining relevant evidence as "evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence").  But the Constitution permits the exclusion of evidence that is "only marginally relevant" or that "poses an undue risk of . . . confusion of the issues."  *Holmes v. South Carolina*, 547 U.S. 319, 326-27 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 689-90 (1986)).  "Evidence of collateral facts or those incapable of affording any reasonable presumption or inference on matters in issue, because too remote or irrelevant, cannot be accepted in evidence."  *McMillan v. Commonwealth*, 277 Va. 11, 22 (2009) (quoting *Smith v. Commonwealth*, 223 Va. 721, 723 (1982)).  In other words, "evidence that produces speculative inferences is irrelevant . . . and should be excluded."  29 Am. Jur. 2d *Evidence* § 295 (2019).

Our opinion in *Barnes v. Commonwealth*, 33 Va. App. 619 (2000), provides a good example of the trial court's authority to exclude evidence that is attenuated and speculative.  The

---

[6] Although the trial court and the Commonwealth repeatedly offered Bates's counsel the opportunity to redact the statement in Alex's text message before the admitted exhibit was shown to the jury, Bates ultimately rejected the redaction option.  Bates's counsel told the trial court that she wanted Alex's statement in evidence for "strategic reasons."  "For example, demonstrating that a member of W.M.'s close friend group strongly believed W.M. to be heterosexual could support the Defendant's argument that W.M. is struggling to come out of the closet and, therefore, had a motive to fabricate."

trial court there barred a defense witness from testifying that Barnes "worked five days a week doing manual labor for minimum wage." *Id.* at 624. Barnes argued that the evidence showed that he "was not a drug dealer" because "a drug dealer who was making $600 per day would not engage in minimum wage work." *Id.* We found no abuse of discretion in excluding the testimony, however, because Barnes "neither proffered nor presented evidence of the relationship between minimum wage employment and drug dealing," thus requiring the factfinder "to speculate as to that relationship." *Id.* at 626. Moreover, the time frame when Barnes worked the minimum-wage job ended before the period when he allegedly used an underling to sell drugs. *Id.* So the "proffered testimony" also "concerned facts remote in time." *Id.* at 626-27.

We likewise see no abuse of discretion in the trial court's excluding D.A.'s testimony as remote and speculative. Bates claimed that W.M. was a gay man at age 19 because, during a 2-week "relationship" as 12-year-old seventh graders, D.A. and W.M. "cuddled," and W.M. would lay his head on D.A.'s shoulder. As the trial court noted, D.A. had little contact with W.M. after their two-week relationship ended. Thus, the trial court reasonably found D.A.'s testimony too speculative to show that W.M. was gay at age 12, let alone 7 years later when he found himself in the back seat of Bates's car.[7]

Worse, the jury would have to speculate that W.M. had also become a *closeted* gay man who was now afraid of being outed. What evidence supports that notion? Bates reasons that D.A. said that his relationship with W.M. lasted only two weeks because W.M.'s "parents found

---

[7] Even Bates's counsel showed difficulty at times when arguing relevance, telling the trial court, "I am not saying that [W.M.]'s gay, but Alex's statement says he has no[] history of that, but that's not true . . . . Do I think it's ridiculous, the idea that 12-year-olds are in a relationship? Yes, 100 percent." Another time, defense counsel said, "Just to be clear . . . I've never intended ever to call [W.M.] a homosexual . . . . I do not believe a same sex encounter a homosexual makes."

- 11 -

out and he had to end it." That shows, Bates surmises, that W.M. at age 19 may have been "struggling to come out of the closet and, therefore, had a motive to fabricate." The trial court considered that to be "pure speculation," requiring multiple assumptions that included, at its core, an imputation of homophobia:

> D.A. offered no testimony as to *why* W.M.'s parents made W.M. end his relationship with D.A. The defense simply *assumes* that W.M.'s parents' objection to the relationship was their opposition to same-sex relationships. There is no evidence to even suggest this. There are myriad reasons why parents might not want their 12-year-old child to be in any type of relationship. Maybe W.M. was not getting his homework done. Maybe the time W.M. was supposedly spending with D.A. was interfering with after-school activities. Maybe W.M.'s parents did not want W.M. spending so much time on Instagram where, according to D.A., he and W.M. would exchange messages. All these "maybes" are pure speculation, but so is the assumption that W.M.'s parents did not approve of same-sex relationships.

2023 Va. Cir. LEXIS 121, at *75-76.

We see no abuse of discretion in that analysis. The connection between D.A.'s two-week relationship with W.M. in seventh grade and W.M.'s supposed status as a closeted gay man— seven years later—is at least as attenuated, remote, and speculative as Barnes's claim that he was not a drug-dealer because he had worked a minimum-wage job. As in *Barnes*, we find no abuse of discretion here in excluding the challenged testimony.

### B. Jury Instruction on Attempted Sodomy (Assignment of Error 3)

Bates contends that the trial court erred in granting Instruction 9A, which permitted the jury to convict him of *attempted* sodomy by anal intercourse, rather than the completed offense for which Bates was indicted. Bates posits that an accused may not be constitutionally convicted of a different offense from the one charged unless it is a lesser-included offense. From that premise, he argues that attempted sodomy is not a lesser-included offense of sodomy because the intent elements are different: attempted sodomy requires specific intent, while sodomy requires

only general intent. He points to our recent decision in *Calokoh v. Commonwealth*, 76 Va. App. 717 (2023), where we said that "[t]he crime of rape does not require proof that the defendant harbor a specific intent to have intercourse without the victim's consent, only the general intent evidenced by the act of committing the offense itself." *Id.* at 732 (quoting *Gonzales v. Commonwealth*, 45 Va. App. 375, 382 (2005) (en banc)). By contrast, attempted rape requires the specific intent "to engage in sexual intercourse." *Fortune v. Commonwealth*, 14 Va. App. 225, 228 (1992).

Bates acknowledges that Code § 19.2-286 specifically allows for a jury to find an accused not guilty of the particular felony charged "but guilty of an attempt to commit such felony." Similarly, Rule 3A:17(c)—which Bates does not mention—provides that an "accused may be found not guilty of an offense charged but guilty of any offense, or of an attempt to commit any offense, that is substantially charged or necessarily included in the charge against the accused." Bates argues that the statute violates his constitutional right to due process to the extent it allows a conviction for an attempt offense that is not a lesser-included offense of the completed charge. And since the conviction here differs from the indictment, he adds that he was convicted in violation of his constitutional and statutory rights to a grand jury.

Whether the statute and the rule constitutionally permit Bates's conviction for attempted sodomy are questions of law that we review de novo. *Tatusko v. Commonwealth*, 79 Va. App. 721, 730 (2024). But we begin by summarizing the trial court's thorough analysis of this question. *See Bates*, 2023 Va. Cir. LEXIS 121, at *15-19.

To start, the trial court observed that our Supreme Court had held in *Cates v. Commonwealth*, 111 Va. 837 (1910), that an "attempt" to commit rape "was necessarily included in the charge of rape." *Id.* at *7 n.5 (quoting *Cates*, 111 Va. at 839). The trial court also pointed to *Fisher v. Commonwealth*, 228 Va. 296 (1984), where a defendant charged with rape had been

- 13 -

convicted of attempted rape. *Id.* at \*9. *But see Richards v. Commonwealth*, 161 Va. 1073, 1076 (1933) ("Certain it is that the essential elements as well as the punishments prescribed for rape and attempted rape are very different . . . ."). Still, the trial court said that it did not need to reach whether attempted sodomy is a lesser-included offense of sodomy; the court assumed it was not. *Bates*, 2023 Va. Cir. LEXIS 121, at \*7 n.5. Even with that assumption, the trial court found that Code § 19.2-286, "in its plain and unambiguous terms, . . . puts the defendant on notice that the jury may convict a felony defendant of an attempt to commit the felony." *Id.* at \*14.

The trial court also found that Bates forfeited his argument by not objecting to the attempt instruction on this ground when it was offered, waiting instead until he moved to set aside the verdict. *Id.* at \*17-19. The court called this a "distinct and independent basis" upon which it denied Bates's post-verdict motion. *Id.* at \*19.

"Wary of deciding constitutional questions unnecessarily," *Grady v. Blackwell*, 81 Va. App. 58, 63 (2024), we do not reach the constitutional question but affirm the trial court's ruling that Bates defaulted his challenge to the attempt instruction. Rule 5A:18 requires that an objection be "stated with reasonable certainty *at the time of the ruling*, except for good cause shown or to enable this Court to attain the ends of justice." (Emphasis added). The purpose of this rule, like its counterpart in Rule 5:25, "is to give the trial court an opportunity to rule on a matter with knowledge of the substance of a party's objection, in order to avoid needless mistrials, reversals, and appeals." *Morgen Indus., Inc. v. Vaughan*, 252 Va. 60, 67 (1996). This procedural-default rule "applies to constitutional claims" as well as other claims. *Harvey v. Commonwealth*, 297 Va. 403, 417 n.3 (2019).

Under this rule, an objection to a jury instruction "must be made in the trial court when the instruction is tendered." *Morgen Indus.*, 252 Va. at 68 (citing *Smith v. Commonwealth*, 165

Va. 776, 781 (1935)). An objection comes too late when, as here, it is made for the first time in a motion to set aside the verdict. *Nolte v. MT Tech. Enters., LLC*, 284 Va. 80, 96-97 (2012).[8]

We agree with the trial court that Bates failed to raise his current challenges to the attempt instruction when it was tendered. Although he opposed that instruction when offered, Bates did not claim that attempted sodomy is *not* a lesser-included offense of sodomy. Nor did he claim that Code § 19.2-286 is constitutionally defective by permitting an attempt conviction on an indictment for a general-intent offense. True, Bates said "it feels at this juncture the Commonwealth is trying to move the goalpost." But that remark was not framed as a federal or Virginia due-process objection. Because Code § 19.2-286 expressly allowed the attempt instruction, it was incumbent on Bates to explain why the plain language of the statute did not apply or why the statute would be unconstitutional as applied. He did neither.[9]

Bates asks us to excuse the default under the ends-of-justice exception in Rule 5A:18. "The exception applies when, through oversight, counsel has failed to timely and specifically object, but, to prevent a miscarriage of justice, it is necessary for the court to overlook this failure to object." *Commonwealth v. Holman*, 303 Va. 62, 72 (2024). Our appellate courts "consider[] two questions when deciding whether to apply the ends of justice exception: '(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice.'" *Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)). The "exception is applied 'in

---

[8] We also note that Bates waited until his opening brief here to raise his argument that the attempted-anal-sodomy conviction violated his grand-jury rights.

[9] Bates correctly points out that the question of whether attempted sodomy is a lesser-included offense of sodomy came up during the charging conference. But that fact does not help Bates. When the trial court asked the Commonwealth if "all attempts [are] lesser included offenses of the greater offense," the prosecutor answered, "Yes," and Bates's counsel did not dispute that.

very limited circumstances including, for example, where the record established that an element of the crime did not occur, a conviction based on a void sentence, conviction of a non-offense, and a capital murder conviction where the evidence was insufficient to support an instruction.'" *Williams v. Commonwealth*, 294 Va. 25, 28 (2017) (quoting *Gheorghiu*, 280 Va. at 689). Appellate courts apply the exception "sparingly to, among other things, prevent gamesmanship and discourage poor advocacy." *A.R.A. v. Commonwealth*, 295 Va. 153, 161 n.3 (2018). "In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Cornell v. Commonwealth*, 76 Va. App. 17, 31 (2022) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997)).

Bates has not satisfied either prong of the inquiry because it is not clear that any error occurred, let alone any grave injustice. As the trial court pointed out, our Supreme Court held in *Cates* that an "attempt" to commit rape "was necessarily included in the charge of rape." 2023 Va. Cir. LEXIS 121, at *7 n.5 (quoting *Cates*, 111 Va. at 839). Further, "[t]he majority of [State] jurisdictions permit conviction of attempt on a charge of the completed crime." Model Penal Code § 1.07 cmt. 5 at 132 (Am. Law Inst. 1985). Indeed, Section 1.07(4)(b) of the Model Penal Code provides that "[a] defendant may be convicted of an offense included in an offense charged in the indictment . . . . An offense is so included when: . . . it consists of an attempt . . . to commit the offense charged . . . ." *Id.* at 101-02.

And even assuming that attempted sodomy were not a lesser-included offense of sodomy, the trial court noted that the plain language of Code § 19.2-286 itself provides constitutionally sufficient notice to defendants that they may be convicted of attempt as a lesser offense. As the California Supreme Court put it in interpreting California's analogous statute, such a statutory provision "informs criminal defendants charged with a completed crime that they must prepare to defend against not just that crime and 'necessarily included' offenses, but also against 'an

attempt to commit' the completed crime." *People v. Fontenot*, 447 P.3d 252, 257 (Cal. 2019) (interpreting Cal. Penal Code § 1159). "By establishing that background rule for all such charges, the statute is meant to provide notice across the board." *Id.* This principle has been recognized as well under Rule 31(c) of the Federal Rules of Criminal Procedure, which permits a defendant charged with a felony to be convicted of "an attempt to commit the offense charged."[10] *See United States v. Brozyna*, 571 F.2d 742, 746 (2d Cir. 1978) (noting that an indictment for a completed offense "required [the defendant] to prepare to defend not only against that charge but also against whatever necessarily included offenses and attempts she could have been convicted of under Fed. R. Crim. P. 31(c)").

A rule forbidding a defendant charged with a general-intent crime from being convicted of attempt, despite that the defendant harbored the specific intent to commit the crime, would also be quite counterintuitive. It would "present[] the anomalous situation of a defendant going free 'not because he was innocent, but for the very strange reason[] that he was too guilty.'" *Diggs v. United States*, 966 A.2d 857, 861 (D.C. 2009) (quoting *United States v. Fleming*, 215 A.2d 839, 840-41 (D.C. 1966)). Regardless, "courts are in general agreement that an attempt conviction may be had on a charge of the completed crime." 2 Wayne R. LaFave, *Substantive Criminal Law* § 11.5(c), 344-45 & n.144 (3d ed. 2018) (collecting cases). As the California Supreme Court found, "not one state high court or federal appellate court has reversed an attempt conviction simply because the defendant was charged only with the completed crime. We decline . . . to be the first." *Fontenot*, 447 P.3d at 257.

---

[10] Rule 31(c) provides: "A defendant may be found guilty of any of the following: (1) an offense necessarily included in the offense charged; (2) an attempt to commit the offense charged; or (3) an attempt to commit an offense necessarily included in the offense charged, if the attempt is an offense in its own right." Fed. R. Crim. P. 31(c). *See United States v. Douglas*, 525 F.3d 225, 250-51 (2d Cir. 2008) (describing history of Rule 31(c) and its predecessor, Act of June 1, 1872, § 9, 17 Stat. 196, 198 (codified at 18 U.S.C. § 565 (1934))).

The trial court here was also correct to point out that Code § 19.2-286 has been on the books in Virginia since 1848. *Bates*, 2023 Va. Cir. LEXIS 121, at *7. *See* 1847-48 Va. Acts ch. 11, § 21; *Dalton v. Commonwealth*, 29 Va. App. 316, 325 n.3 (1999) (en banc) (tracing legislative history), *rev'd on other grounds*, 259 Va. 249 (2000). The trial court was right to recognize that Bates's construction would require penciling language into the statute:

> The statute does *not* say: A jury may convict a defendant of an attempt to commit a felony *except when the attempt crime is a specific intent crime and the crime indicted is a general intent crime*. Nor does the statute say: A jury may convict a defendant of an attempt to commit a felony, *but only when the attempt is a lesser included offense of the felony*. Nor may this Court graft onto the statute such a caveat.

*Bates*, 2023 Va. Cir. LEXIS 121, at *8.[11]

For all these reasons, we cannot say that the trial court erred in permitting the jury to convict Bates of the lesser offense of attempted anal sodomy, let alone that "a miscarriage of justice has occurred." *Cornell*, 76 Va. App. at 31 (quoting *Redman*, 25 Va. App. at 221). So we affirm the trial court's finding that Bates defaulted this claim, and we do not reach the merits of his constitutional challenge.

---

[11] Bates reads too much into *Dalton*, 259 Va. at 249. In reversing our en banc decision, the Supreme Court held in *Dalton* that Code § 19.2-286 did not entitle a defendant to a lesser-included-offense instruction that the defendant was an accessory "after the fact." 259 Va. at 253-55. The Court noted that being an accessory after the fact is not a lesser-included offense of murder. *Id.* at 254. And the remaining text of the statute covered being an "accessory," but not an accessory "after the fact." *Id.* Indeed, the General Assembly deleted being an accessory "after the fact" when it recodified the statute in 1975. *Id.* *Compare* 1975 Va. Acts ch. 495, at 899 (Code § 19.2-286), *with* 1960 Va. Acts ch. 366, at 541 (Code § 19.1-254). True, the Court said in *Dalton* that the deletion eliminated "any conflict between the statute and the notification requirements of due process." 259 Va. at 254. But no jurist on this Court or the Supreme Court in *Dalton* suggested that due process would forbid an attempt conviction when the completed offense is a general-intent crime.

- 18 -

### C. Sufficiency of the Evidence of Attempted Sodomy (Assignment of Error 4)

Finally, Bates challenges the sufficiency of the evidence to sustain the attempted anal-sodomy conviction, arguing that the Commonwealth failed to prove that he had the specific intent to penetrate W.M. "The relevant issue on appeal is, 'upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Lambert v. Commonwealth*, 298 Va. 510, 515 (2020) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)).

That standard is easily satisfied here. In the early morning hours of January 1, 2022, W.M. was intoxicated and incoherent in the back seat of Bates's car. Knowing that, Bates climbed into the back seat to be alone with him. When Nolan and Robert returned from their walk, they witnessed Bates on top of W.M., who was lying face down, unresponsive. Bates and W.M. were in a state of undress. According to Nolan, Bates was "gyrating" and "thrusting" into W.M. Startled when he noticed his friends outside the car window, Bates drew away from W.M. and pulled up his pants. Although W.M. could not remember the encounter, W.M. felt pain in his anus when he awoke, and the sexual-assault nurse documented abrasions to his anus consistent with penetration.

Bates admitted that he was engaged in sexual contact with W.M., including oral sodomy, but Bates denied that he ever touched W.M. "back there." Particularly with such overwhelming evidence to the contrary, the jury was "entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Speller v. Commonwealth*, 69 Va. App. 378, 388 (2018). In short, a reasonable finder of fact could conclude beyond a reasonable doubt that Bates intended to penetrate W.M.'s anus and that he performed an act toward that objective, even if Bates did not succeed. *Accord Fortune*, 14 Va. App. at 228 ("Specific intent to commit rape may be inferred from conduct if such intent

- 19 -

follows naturally from the conduct proven.  Where the conduct of the accused, under conditions and circumstances described, points with reasonable certainty to a specific intent to commit rape, intent is established." (citation omitted)).

CONCLUSION

Finding no reversible error by the trial court, we see no basis to disturb Bates's convictions.

*Affirmed.*